**EXITO ELECTRONICS., CO., LTD., Appellant,**

v.

**Virginia TREJO, et al., Appellees.**

**No. 13–02–368–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 16, 2005.

Rick Lee Oldenettel, Jefferson H. Read, Oldenettel & Associates PC, Houston, for appellant.

Carol A. Swanda, Steven H. Beadles, Law Office of Steven H. Beadles, Dallas, Frank Sabo, Sweetman, Skaggs & Lawler, LLP, Edinburg, Jose E. Garcia, Garcia & Villarreal, Mark A. Cantu, Juan A. Gonzalez, Law Office of Mark A. Cantu, Michael Zanca, Roerig, Oliveira & Fisher, L.L.P., Mike Mills, Atlas & Hall, McAllen, Joe W. Meyer, Nathan A. Steadman, Meyer, Knight & Williams, Byron C. Keeling, Ruth B. Downes, Robert Alan York, Holman & Keeling & York, Houston, David M. Prichard, Brendan K. McBride, Dwayne Day, Prichard, Hawkins & Young, San Antonio, Jaime A. Drabek, Drabek & Associates, Patricia Kelly, Adams & Graham, Harlingen, for appellees.

Before Justices HINOJOSA, YAÑEZ and CASTILLO.

## OPINION

· Opinion by Justice CASTILLO.

This is an interlocutory appeal from the trial court's order denying the special appearance of Exito Electronics Company, Ltd. ("Exito–Taiwan"), appellant.[1] Appellees include Virginia Trejo, individually and as representative of the estate of Paulino Trejo, Nadia Guadalupe Salvador Guz-

---

1. Parties may challenge by interlocutory appeal a trial court's order regarding special appearances. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(7) (Vernon Supp.2004–05).

man, individually, and Aurelio Salvador Florez, individually and as representative of the estate of Juana Zuniga, deceased, and as next friend of Maria de la Luz Crecencia Salvador Guzman, a minor (together, "Trejo"). Appellees also include Pacific Electricord Co., Inc. ("Pacific Electricord") and Woods Industries, Inc. ("Woods").[2] We affirm the trial court's denial of the special appearance as to Exito–Taiwan and reverse as to Exito–Philippines.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

On Christmas Day in 1998, Paulino Trejo and Juana Zuniga died in a house fire in Hillsboro, Texas. Relatives of the victims filed suit on September 9, 1999, alleging the fire was caused by a defective extension cord. Original defendants included numerous alleged distributors. An amended petition filed December 22, 2000, included Exito–Taiwan as a defendant. It alleged that Exito–Taiwan had manufactured the extension cord in issue and that, although Exito–Taiwan was a foreign corporation organized under the laws of Taiwan, it conducted business in Texas. Trejo sought service on Exito–Taiwan under rule 108a(1)(c) of the Texas Rules of Civil Procedure and the Texas long-arm statute, as provided in sections 17.044 and 17.045 of the Texas Civil Practices and Remedies Code. *See* Tex.R. Civ. P. 108a(1)(c); Tex. Civ. Prac. & Rem.Code Ann. §§ 17.044, 17.045 (Vernon 1997 and Supp.2004–05).

On March 5, 2001, Exito–Taiwan timely filed its special appearance and accompanying affidavits, objecting to jurisdiction being exercised over it by a Texas court.[3] Trejo, Pacific Electricord, and Woods all opposed the special appearance, contending that (1) special and general personal jurisdiction existed over Exito–Taiwan, and (2) an exercise of that jurisdiction would not offend traditional notions of fair play and substantial justice. The parties engaged in discovery related to the special appearance, including the deposition of Exito–Taiwan's corporate representative, Mr. Wu. A hearing was held June 3, 2002, at which the parties addressed evidence developed in this process. The trial court's order denying Exito–Taiwan's special ap-

2. Pacific Electricord and Woods are co-defendants of Exito–Taiwan in the underlying action. References in this opinion to "Appellees" are to Trejo, Pacific Electricord, and Woods, collectively.

3. Exito–Taiwan is the party identified and served with the Plaintiffs' Seventh Amended Petition, although both Exito–Taiwan and Exito Electronics Co., Ltd.-Philippines ("Exito–Philippines") are referenced in that petition. Exito–Philippines is an affiliate that also manufactures and ships extension cords of the type in issue; it is based in Manila, The Philippines. Exito–Philippines was never formally named or served by any party, and never became a party to the litigation. Pacific Electricord did initially name Exito–Philippines as its co-defendant and cross-defendant in its original cross-claim for statutory and common law indemnity (urging that Exito–Philippines is "also known as" Exito–Taiwan). However, later that same day Pacific Electricord filed its second amended cross-claim in which Exito–Taiwan is properly named and identified as the cross-defendant. In the amended cross-claim, Pacific Electricord added to its statutory and common law indemnity claims the following: (1) a claim for contractual indemnity, based upon purchase orders between Pacific Electricord and Exito–Taiwan; and (2) allegations that Exito–Taiwan is the alter ego of Exito–Philippines and/or operated Exito–Philippines as its single business enterprise, thereby estopping Exito–Taiwan from denying that it manufactured the extension cord. Even if Exito–Taiwan were not the manufacturer, Pacific Electricord claimed it is responsible for indemnification as if it were the manufacturer. Thereafter, although Exito–Philippines is never named or served as a formal party to the suit, Pacific Electricord continued to include the name of Exito–Philippines in captions on pleadings.

pearance was entered June 19, 2002,[4] and provided "that sufficient minimum contacts exist to create both specific and general jurisdiction over Exito[-Taiwan] and Exito-P[hilippines], and that the exercise of jurisdiction over Exito[-Taiwan] and Exito-P[hilippines] will not offend the traditional notions of fair play and substantial justice." Specific findings provide as follows:

a. Exito[5] has voluntarily submitted to the jurisdiction of a Texas court by filing a general denial in Cause No. 99–4552; *Quilicot v. Exito, Ltd., et al.;* in the 205th Judicial District Court of El Paso County, Texas.

b. The lawsuit in El Paso, Texas involves an extension cord allegedly manufactured by Exito which was allegedly defective and caused a fire.

c. Exito has and still does systematically and continuously engage in business with a Texas resident, Intertrade Industries, in Fort Worth, Texas from as early as 1995.

d. Exito exclusively manufactures SPT–2, 16AWG house-hold extension cords for sale in the United States and sells all of its cords to American companies.

e. Exito has the expectation that many of the SPT–2, 16AWG extension cords will reach Texas consumers.

f. Exito is aware that its SPT–2, 16AWG extension cords are shipped directly to Texas and has intentionally directed its cords to Dallas/Fort Worth airport in Texas via air-freight.

g. Exito has knowingly shipped more than five million house-hold extension cords to Texas in 1998.

h. Exito has specifically marketed goods, including SPT–2, 16AWG house-hold extension cords, to Texas residents via the Worldwide Web.

i. Exito has entered into contracts with insurance carriers to defend itself in lawsuits throughout the United States and in Texas.

j. The traditional notions of fair play and substantial justice are not offended by litigating this case in Texas because Exito has previously defended itself in a Texas Court, The State of Texas has a significant interest in resolving this action for the safety of its consumers; Plaintiffs and the other Defendants have a significant interest in resolving this case in Texas; this lawsuit may be more efficiently resolved in Texas and no evidence suggests that another forum is more appropriate to resolve this matter;

[k]. Exito's officers and directors have traveled to Texas on behalf of Exito and Exito–P[6] for both business and pleasure. Exito and Exito–P share officers, directors and/or shareholders.

[l]. Exito–P manufactures SPT–2, 16AWG house-hold extension cords authorized and approved by Underwriters Laboratory for use in the United States and in Texas and Exito is the exclusive client of Exito–P.

4. The trial court also denied Exito–Taiwan's motion to transfer venue. There is no issue related to venue in this interlocutory appeal.

5. The trial court's references to "Exito" refer to Exito–Taiwan.

6. The trial court's references to "Exito–P" refer to Exito–Philippines.

As a result of these specific findings and the other evidence presented, the Court finds that it has specific and general jurisdiction over Exito and Exito–P and that the exercise of jurisdiction over Exito and Exito–P will not offend the traditional notions of fair play and substantial justice.

ORDERED that the Rule 120a Special Appearance of Defendants EXITO ELECTRONICS, CO., LTD., and EXITO ELECTRONICS CO., LTD.—PHILIPPINES objecting to the jurisdiction of this Court are in all respects DENIED.[7]

This interlocutory appeal followed.

On original submission, we held that Exito–Taiwan waived its special appearance by filing Rule 11 agreements[8] and engaging in discovery before obtaining a determination on the special appearance. *Exito Elecs. v. Trejo,* 99 S.W.3d 360, 373 (Tex. App.-Corpus Christi 2003), *rev'd and remanded,* 142 S.W.3d 302 (Tex.2004). We also determined Exito–Taiwan's affidavits were fatally defective. *Id.* The Supreme Court reversed, concluding that we erroneously found waiver and that defective affidavits or verifications do not concede jurisdiction. *Exito Elecs. v. Trejo,* 142 S.W.3d 302, 308 (Tex.2004). Consistent with the mandate of the Supreme Court, we consider the merits of Exito–Taiwan's special appearance.

## II. THE STANDARD OF REVIEW

Whether a court has personal jurisdiction over a nonresident defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). However, the trial court frequently resolves questions of fact before deciding the jurisdiction question. *Id.* If a trial court enters an order denying a special appearance and also issues findings of fact and conclusions of law, the nonresident defendant may challenge the fact findings on legal and factual sufficiency grounds. *Id.* Unchallenged fact findings are binding on the appellate court. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). We conduct a *de novo* review when applying the law to the facts. *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.,* 82 S.W.3d 622, 639 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.) (op. on rehearing) (en banc). If an order on a special appearance is based on undisputed or otherwise established facts, such as where the nonresident defendant does not challenge the trial court's findings of fact, the exercise of personal jurisdiction is a question of law we review de novo. *Happy Indus. Corp. v. Am. Specialties, Inc.,* 983 S.W.2d 844, 848 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.).

Exito–Taiwan asserts that none of the "factors" in the trial court's order "are sufficient for a finding of either specific or general jurisdiction." Rather than challenging specific findings, Exito–Taiwan focuses its argument on the absence of sufficient minimum contacts with Texas to justify an exercise of personal jurisdiction over it by the Texas courts. We interpret Exito–Taiwan's assertion as a challenge to the trial court's conclusions of law. Tex. R.App. P. 38.1(e). We review for correctness the legal conclusions drawn by the trial court from the established facts. *BMC,* 83 S.W.3d at 794. If we determine that a conclusion of law is erroneous, but

---

7. The Order Denying Special Appearance was entered June 17, 2002.

8. *See* Tex.R. Civ. P. 11. The rule 11 agreements extended the time for Exito–Taiwan to answer the lawsuit, but were not conditioned upon a subsequent special appearance.

the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

### III. ISSUES ON APPEAL

In the two following issues, Exito–Taiwan challenges the trial court's ruling denying its special appearance. It argues that the trial court erred in finding (1) specific jurisdiction over Exito–Taiwan, and (2) general jurisdiction over Exito–Taiwan.

### IV. PERSONAL JURISDICTION

#### A. Minimum Contacts with the Forum State

■■■ Texas courts may assert personal jurisdiction over a nonresident defendant only if such jurisdiction is authorized by the Texas long-arm statute, and is consistent with federal and state standards of due process. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.001–17.093 (Vernon 1997 and Vernon Supp.2004–05); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *Coleman*, 83 S.W.3d at 806 (citing *Guardian Royal*, 815 S.W.2d at 226). The statute lists particular acts that constitute "doing business," but also provides that "other acts" of the nonresident may place him within the "doing business" requirement. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990).

■■■ Jurisdiction is proper if a nonresident defendant has established "minimum contacts" with Texas and maintenance of the suit will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1940). The purpose of minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Coleman*, 83 S.W.3d at 806; *Schlobohm*, 784 S.W.2d at 357. Focus is therefore upon the defendant's activities and expectations. *Coleman*, 83 S.W.3d at 806. This analysis requires that the defendant "purposefully avail" itself of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas laws, *Id.*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), such that the defendant could reasonably anticipate being called into a Texas court. *Coleman*, 83 S.W.3d at 806; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Jurisdiction will not attach if contacts are random, fortuitous, or attenuated. *Coleman*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 226. The quality and nature of the contacts, rather than their number, are the focus of this analysis. *Coleman*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 230 n. 11.

#### B. Specific Jurisdiction

■■■ A nonresident defendant's minimum contacts with Texas may confer either general or specific jurisdiction. *BMC*, 83 S.W.3d at 795. Activities of the defendant in the forum may be isolated or disjointed, but where the cause of action in issue arises from a particular activity, jurisdiction attaches and is said to be specific. *Id.* at 796; *Schlobohm*, 784 S.W.2d at 357; *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 n.8 (1984). Even a single act or event, if it creates or gives rise to the plaintiff's cause of action, may constitute sufficient minimum contact to support

the exercise of specific jurisdiction. *Burger King*, 471 U.S. at 476 n. 18, 105 S.Ct. 2174; *Ahadi v. Ahadi*, 61 S.W.3d 714, 719 (Tex App.-Corpus Christi 2001, pet. denied). This requirement for a "substantial connection" between the plaintiff's cause of action and the defendant's contacts means that those contacts, both with the litigation and the forum, must be meaningful, not "random, fortuitous, or attenuated." *Ahadi*, 61 S.W.3d at 719. The substantial connection between the nonresident defendant and the forum state necessary for a finding of minimum contacts must come about by action or conduct of the nonresident defendant purposefully directed toward the forum state. *Guardian Royal*, 815 S.W.2d at 226. An element of foreseeability is also implicit in the "substantial connection" requirement; a nonresident defendant should be able to reasonably predict that it may be subject to personal jurisdiction in the forum state. *Ahadi*, 61 S.W.3d at 719–20. However, "foreseeability" is not necessarily determinative when considering whether the nonresident defendant purposefully established "minimum contacts" with the forum state. *Guardian Royal*, 815 S.W.2d at 226–27.

## C. General Jurisdiction

 Where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between the defendant's particular act and the cause of action in issue. In these cases, jurisdiction is said to be general. *BMC*, 83 S.W.3d at 796; *Guardian Royal*, 815 S.W.2d at 228; *Schlobohm*, 784 S.W.2d at 357. "General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *BMC*, 83 S.W.3d at 797 ((citing *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996) (orig.proceeding); *Guardian*

*Royal*, 815 S.W.2d at 228)). A nonresident must have conducted more substantial activity in the forum state for the state to exercise general jurisdiction than for it to exercise specific jurisdiction. *CSR*, 925 S.W.2d at 595.

## D. The Burden of Proof

 While a plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute, *Coleman*, 83 S.W.3d at 807 (citing *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965)), upon the filing of a special appearance the nonresident defendant assumes the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Coleman*, 83 S.W.3d at 807; *CSR*, 925 S.W.2d at 596; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985) (per curiam). In the absence of sufficient jurisdictional allegations by the plaintiff, the defendant meets its burden of negating all potential bases of jurisdiction by presenting evidence that it is a nonresident. *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 n. 2 (Tex.App.-Corpus Christi 1999, no pet.); *KPMG*, 847 S.W.2d at 634.

## E. Sufficiency of Jurisdictional Allegations

 Exito–Taiwan argues that because Trejo did not plead facts adequate to establish personal jurisdiction over the corporation in Texas, Exito–Taiwan met its burden in its special appearance by proving its nonresidency. To the contrary, the amended pleading joining Exito–Taiwan as a defendant alleged that the company was doing business in Texas and had manufactured the allegedly defective extension cord which was distributed in Texas. We hold that Trejo's pleadings were sufficiently clear with regard to jurisdictional alle-

gations related to Exito–Taiwan. *See El Puerto,* 82 S.W.3d at 629 (holding that allegations of doing business in Texas and commission of tort in Texas sufficiently alleged personal jurisdiction). Exito–Taiwan therefore bears the burden to negate all potential bases of jurisdiction. *M.G.M. Grand,* 8 S.W.3d at 408 n. 2; *KPMG,* 847 S.W.2d at 634.

### F. Jurisdiction over Exito–Philippines

Exito–Philippines is not a party to the underlying suit. It was never named as a party, never served with process, and never appeared in the suit. Exito–Taiwan is the entity that was served and filed a special appearance.

The trial court's order nevertheless recites that it "finds sufficient minimum contacts exist to create both specific and general jurisdiction over Exito and Exito–P and that the exercise of jurisdiction over Exito and Exito–P will not offend the traditional notions of fair play and substantial justice." That order continues:

> [T]he Court finds that it has specific and general jurisdiction over Exito and Exito–P and that the exercise of jurisdiction over Exito and Exito–P will not offend the traditional notions of fair play and substantial justice ... It is ORDERED that the Rule 120a Special Appearance of Defendants EXITO ELECTRONICS, CO., LTD. and EXITO ELECTRONICS, CO., LTD.-PHILIPPINES objection to the jurisdiction of this Court are in all respects DENIED.

Lack of jurisdiction is fundamental error and may be raised for the first time before this court. *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex.1991) (per curiam). Although no party has raised this issue in this appeal, courts nevertheless have the power to reverse for an unassigned error that is truly fundamental, and such power need not be expressly conferred by statute or rule. *McCauley v. Consol. Underwriters,* 157 Tex. 475, 304 S.W.2d 265, 266 (1957) (per curiam).

"In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance." Tex.R. Civ. P. 124; *Mapco,* 817 S.W.2d at 687. Further, "judgment may not be granted in favor of [or against] a party not named in the suit as a plaintiff or a defendant." *Mapco,* 817 S.W.2d at 687 (citing *Fuqua v. Taylor,* 683 S.W.2d 735, 738 (Tex.App.-Dallas 1984, writ ref'd n.r.e.)). In this case, as in *Mapco,* the parties' claims identified only Exito–Taiwan as a party, and service was had only upon that entity. *Mapco,* 817 S.W.2d at 687. Each answer was filed only on behalf of Exito–Taiwan and there is no indication in the record that Exito–Philippines waived service of process. *Id.* Generic reference to "Exito" or to "Exito–P," without more, is not sufficient to place Exito–Philippines before the court. *Id.* Therefore, to the extent the trial court's order purports to be binding against Exito–Philippines, we reverse that portion, finding it to be in error and without effect.[9]

---

9. The trial court did have jurisdiction to issue findings binding upon Exito–Taiwan that may have derived from its relationship with Exito–Philippines. The trial court's findings, as noted, include that Exito–Taiwan and Exito–Philippines share officers, directors and/or shareholders, and that Exito–Taiwan is the exclusive client of Exito–Philippines. These findings presumably were issued in conjunction with Pacific Electricord's contentions that Exito–Taiwan and Exito–Philippines were engaged in a single business enterprise, and/or that Exito–Taiwan was the alter ego of Exito–Philippines. However, these findings do not bear upon whether or not jurisdiction is proper over Exito–Taiwan, except to the extent the trial court may have relied upon minimum contacts of Exito–Philippines in assessing Exito–Taiwan's special appearance. *See BMC Software Belgium, N.V. v. Marchand,*

## V. ANALYSIS—APPLICATION OF LAW TO FACTS

### A. Specific Jurisdiction

Appellees argue that specific jurisdiction attaches because Exito–Taiwan had sufficient specific contacts with Texas, namely, shipments of the defective product either to entities in Texas, or made with the reasonable expectation that the product would enter Texas. Appellees contend that the requisite reasonable expectation arises when a significant volume of products are shipped to the forum state.

A defendant's delivering of its product into the stream of commerce with the expectation that the product will enter the forum state will ordinarily satisfy the due process requirement of minimum contacts, so as to afford that state personal jurisdiction over the defendant. *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 93 (Tex. 1988), *overruled in part on other grounds;*

*Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 586–87 (Tex.1999); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *see also Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199–200 (5th Cir.1980); *Kawasaki*, 699 S.W.2d at 201.[10]

To meet its burden to negate all potential bases of jurisdiction,[11] Exito–Taiwan tendered a verification and affidavits, as well as documentary evidence, as follows: (1) Courtney Duke [12] verified that she was "authorized to make this verification," all facts set out in the special appearance were within her personal knowledge, and were true and correct; and (2) the affidavit of Juan Kao, a director of Exito–Taiwan, who stated: (a) Exito–Taiwan was not a resident of Texas and did not maintain a registered agent for service in Texas; (b) Exito–Taiwan had no officers, agents, employees or sales representatives

---

**10.** The *Kawasaki* court observed:

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly *defective merchandise has there been* the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex.1985) ((citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)) (citations omitted)).

**11.** *See M.G.M. Grand Hotel v. Castro*, 8 S.W.3d 403, 408 n. 2 (Tex.App.-Corpus Christi 1999, no pet.); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 634 (Tex.App.-Dallas 1993, writ denied).

**12.** Courtney Duke only states she is authorized to make the affidavit, and does not identify her capacity or affiliation with Exito–Taiwan.

83 S.W.3d 789, 798 (Tex.2002) (personal jurisdiction may be established over a nonresident defendant if the relationship between the foreign corporation and its subsidiary that does business in Texas would allow the court to impute the subsidiary's "doing business" to the parent corporation); *Conner v. ContiCarriers & Terminals*, 944 S.W.2d 405, 418 (Tex.App.-Houston [14th Dist.] 1997, no writ). Because no evidence as to Exito–Philippines' contacts with Texas was tendered for consideration, we do not here explore these theories and draw no conclusions as to the viability of these findings.

in Texas; (c) Exito–Taiwan neither trained nor solicited employees in Texas; (d) Exito–Taiwan did not place advertisements in Texas; (e) Exito–Taiwan owns no real or personal property in Texas; (f) Exito–Taiwan has never had any post office boxes, bank accounts, telephone number or other tangible assets in Texas; (g) Exito–Taiwan did not make or solicit any business transaction in Texas with any of appellees; (h) Exito–Taiwan did not commit any acts or consummate any transactions relating to appellees' causes of action as reflected in the seventh amended petition; and (i) the causes of action did not arise out of any contact initiated by Exito–Taiwan within Texas.

In response, appellees tendered evidence to establish either specific or general jurisdiction over Exito–Taiwan.

### 1. Knowledge That Ultimate Destination of Shipments Is Texas

The evidence reflects that the same or similar extension cords were sold by Exito–Taiwan to various companies in the United States, including General Electric Lighting ("GE Lighting"), Woods, and Pacific Electricord. Extension cords filling orders placed by Pacific Electricord were shipped free-on-board ("FOB") to Los Angeles, California. Shipments to Woods similarly were directed to locations outside of Texas. Exito–Taiwan did ship numerous extension cords to DFW Airport, Texas, to fill orders placed by GE Lighting. The ultimate destination for these cords remained GE's address at DFW Airport; however all cords were shipped "FOB" to Manila, The Philippines. Title transferred at the FOB destination.[13]

Appellees assert that, because GE Lighting's orders originated in Fort Worth, Texas, and the ultimate destination of the shipments was DFW Airport, Exito–Taiwan necessarily had the expectation that the products would reach Texas. Appellees further contend that simply shipping such large volumes of the product to distributors in the United States is sufficient to raise the general expectation that the product will reach Texas consumers, such that Exito–Taiwan purposefully availed itself of the Texas market. However, it is the quality and nature of the contacts, rather than their number, which must remain the focus of this analysis. *Coleman,* 83 S.W.3d at 806; *Guardian Royal,* 815 S.W.2d at 230 n. 11.

In his deposition, Mr. Wu agreed that large numbers of cords were purchased by companies in the United States. Exito–Taiwan is aware that these cords were designed for the United States power supply and that the cords sold to Pacific–Electricord, Woods, and GE Lighting are sold to United States consumers. The evidence reflects that several million extension cords were shipped to GE Lighting in Texas during the period in question. Mr. Wu testified that he did not know that many cords are ultimately sold to Texas consumers, that being the purchaser's internal concern, but that using "common sense" he could guess that some of the products are eventually sold in Texas. He also testified that Exito–Taiwan delivers all its products to Manila, The Philippines, and that all shipping arrangements from there are made by each individual purchasing company. While Exito–Taiwan is aware that GE Lighting has many of its orders shipped from Manila to DFW Air-

---

**13.** *See Robinson & Martin v. Houston & T.C.R. Co.,* 105 Tex. 185, 146 S.W. 537, 538 (1912) (title to goods vests in purchaser upon delivery of goods by seller to the carrier; neither payment of the price nor actual delivery to the purchaser is necessary to pass the title).

port, all business dealings between Exito–Taiwan and GE took place either in Taiwan or in Cleveland, Ohio. Payments are wire-transferred to Taiwan.

In *Ashkelon*, the court noted that a "defendant's delivering of its product into the stream of commerce with the expectation that the product will enter the forum state will ordinarily satisfy the due process requirement of minimum contacts so as to afford that state personal jurisdiction over the defendant." *Ashkelon*, 748 S.W.2d at 93. The *Ashkelon* court distinguished the situation faced in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107–08, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion), where Asahi never contemplated that sale of its component part (the tire valve) to a Taiwanese company would subject it to lawsuits in California. *Ashkelon*, 748 S.W.2d at 93. However, a nonresident's mere awareness that its products might end up in the forum state is not enough to show that it purposely availed itself of the market of that forum state. *CMMC v. Salinas*, 929 S.W.2d 435, 438 (Tex.1996) (citing *Asahi*, 480 U.S. at 110–11, 107 S.Ct. 1026). A "substantial connection between the defendant and the forum state [is] necessary for a finding of minimum contacts." *CMMC*, 929 S.W.2d at 438.

> The "substantial connection" between the defendant and the forum State ... must come about *by an act of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing

channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* (emphasis in original) (citing *Asahi*, 480 U.S. at 110–12, 107 S.Ct. 1026). There is no direct evidence here that Exito–Taiwan's product would be delivered to Texas retail stores or that it knew Texas consumers would purchase the cords. There is further no evidence in this case to track the number of Exito–Taiwan's products sold in Texas or that sales were regularly made by GE Lighting to retailers or consumers in Texas. There is no evidence of the other factors identified in *CMMC. See CMMC*, 929 S.W.2d at 438.

In *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.*, 163 S.W.3d 120, 131 (Tex.App.-San Antonio, 2005, no pet.), evidence reflected that, much like here, shipments were sent FOB to Malaysia. HWG Kintron argued (much as Exito–Taiwan does here) that it did not participate in or control any decision to ship its products to any ultimate destination in Texas. The court noted the controlling issue under the stream-of-commerce doctrine is the "reasonable expectation" that the product will be sold in Texas, not the "right of control." *Id.* (citing *Kawasaki*, 699 S.W.2d at 201). However, in *Kintron*, evidence established that the company was aware its shipments were sent directly to Texas retailers, it forwarded invoices directly to Texas retailers, and it had letters of credit with Texas companies. *Kintron*, 163 S.W.3d at 126. Any contacts are more attenuated here.

We also note *S.P.A. Giacomini v. Lamping*, 42 S.W.3d 265, 273 (Tex.App.-Corpus Christi 2001, no pet.), in which a gas valve was sold to distributors in the United States but not to any Texas residents. Giacomini, an Italian corporation, had no offices in Texas, no property or bank accounts, no contracts with Texas parties. *Id.* However, large volumes of product were forwarded "FOB" to the Port of Houston. *Id.* Title therefore transferred in Texas. *See Robinson & Martin v. Houston & T.C.R. Co*, 105 Tex. 185, 146 S.W. 537, 538 (1912). The *Giacomini* court observed that it was. not a case of " 'placement of product into the stream of commerce, without more.' ... Giacomini ships mass quantities of its products to a distributor in Texas, fully aware that the distributor will be marketing significant quantities to customers in Texas." *Giacomini*, 42 S.W.3d at 273 (citing *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026). Therefore, jurisdiction did attach. Here, unlike in *Giacomini*, large volumes of products were not shipped FOB a Texas destination. We have been directed toward no evidence that the products are directed specifically to Texas consumers.[14]

In *CMMC*, a French manufacturer shipped its allegedly defective winepress from a New York equipment distributor FOB the Port of Houston. *CMMC*, 929 S.W.2d at 439. This single contact with Texas was deemed insufficient to cause jurisdiction to attach even under a liberal view of the stream of commerce doctrine. *Id.* at 438. While the situation before us is not restricted to an "isolated" event, *CMMC* clearly provides that where there is no evidence that a company de-

signs products for use in the particular state, engages in. special efforts to market them here, or takes other actions to purposely avail itself of that market, jurisdiction does not easily attach. *Id.* at 439. While under specific jurisdiction, even one act by a defendant can support jurisdiction, that act must still be purposefully directed at the forum state so that the defendant could foresee being haled into court there. *Id.*

We remain mindful that it is the quality and nature of the contacts, rather than their number (or the number of individual products ultimately shipped to the forum state), that must be the focus of this analysis. *Coleman*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 230 n. 11. Exito–Taiwan deliberately structured its business so that title to its goods transferred at foreign or other state ports, even though it knew that the ultimate destination of many cords was GE Lighting's warehouse at DFW Airport, Texas. In order for specific jurisdiction to attach, there must be a substantial connection between Exito–Taiwan and Texas resulting from action or conduct of the nonresident defendant purposefully directed toward the forum state. *Guardian Royal*, 815 S.W.2d at 226. While foreseeability is implicit in the "substantial connection" requirement, *Ahadi*, 61 S.W.3d at 719–20, it is not necessarily determinative of whether the nonresident defendant *purposefully* established "minimum contacts" with the forum state. *Guardian Royal*, 815 S.W.2d at 226–27. We conclude that the mere knowledge that the product would ultimately reach Texas, when coupled with the

---

14. Appellees assert that Exito–Taiwan's purchasers resold the products to national distributing chains that had markets in Texas and we should, therefore, infer that Exito–Taiwan anticipated a Texas market. The evidence is too weak to constitute an act of

Exito–Taiwan purposefully directed to Texas. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex.1991) (finding that jurisdiction over a non-resident defendant cannot be based upon unilateral acts of a plaintiff or others).

deliberate structuring of business to avoid purposeful contact with Texas, is insufficient in itself to constitute "minimum contacts" between Exito–Taiwan and Texas that will trigger specific jurisdiction. "A manufacturer cannot fairly be expected to litigate in every part of the world where its products may end up; its contact with the forum must be more purposeful." *CMMC*, 929 S.W.2d at 440.

We therefore examine the other arguments raised by appellees to determine if those other factors will trigger specific jurisdiction.

## 2. The Indemnification Obligation

 Appellees next argue that Exito–Taiwan purposefully directed its activities to Texas when it agreed to indemnify Pacific Electricord and Woods in the event of litigation wherever it might arise, including in Texas. Pacific Electricord's terms and conditions, which are part of its purchase orders, require that Exito–Taiwan secure insurance to indemnify Pacific Electricord. The first insurance certificate in evidence is issued by INA to Exito–Taiwan, dated February 7, 1998, and is directed to Pacific Electricord. It reflects that products liability insurance for Exito–Taiwan and Exito–Philippines is provided for the policy territory of the U.S.A. and Canada.[15] Jurisdiction may attach where a party enters into a contract with foreseeable economic effects in Texas. *Commonwealth Gen. Corp. v. York*, 141 S.W.3d 840, 847–48 (Tex.App.-Corpus Christi 2004, pet. filed). However, the contract in issue here, with the requirement for insurance and indemnification, does not on its face contemplate lawsuits in Texas and does

not reflect a foreseeable application in Texas as clearly as that in *York. Id.* In *Koll Real Estate Group, Inc. v. Purseley*, 127 S.W.3d 142, 147 (Tex.App.-Houston [1st Dist.] 2003, no pet.), the court observed that while an indemnification agreement certainly contemplates the possibility of litigation, it does not represent the sort of purposeful direction of activities toward the forum state as contemplated by the Supreme Court in *Asahi*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92. *Koll*, 127 S.W.3d at 147. Specific jurisdiction could not arise solely from the existence of such an agreement. Here, while it is true that the Trejo's cause of action and Pacific Electricord's assertion of indemnity based on that suit are directly related, the cause of action does not arise out of that indemnification agreement or contact. *See id.* at 148; *Guardian Royal*, 815 S.W.2d at 227–28 (citing *Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868; *World–Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. 559). Therefore, specific jurisdiction will not attach on this basis.

## 3. Advertising on the World–Wide Web

Appellees argue that Exito–Taiwan purposefully availed itself of the Texas market by advertising in Texas via the worldwide web.

 "Internet use is characterized as falling within three categories on a sliding scale for purposes of establishing personal jurisdiction." *Reiff v. Roy*, 115 S.W.3d 700, 705 (Tex.App.-Dallas 2003, pet. denied) (citing *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex.App.-Fort Worth 2001, no pet.)). At one end of the scale are

---

**15.** A second certificate, issued by Allianz President General Insurance Company to Exito–Taiwan and directed to Pacific Electricord, reflects that products liability insurance for Exito–Taiwan, Exito–Philippines and a third company is provided for a worldwide policy territory, including the U.S.A. and Canada. However, it is dated January 1, 2001, after the events in issue in the underlying suit.

websites clearly used for transacting business over the internet, such as entering into contracts and knowing and repeated transmission of files of information, which may be sufficient to establish minimum contacts with a state. *Reiff,* 115 S.W.3d at 705. On the other end of the spectrum are "passive" websites that are used only for advertising over the Internet. *Id.*

■ Passive websites are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state. *Id.* at 706; *Michel,* 45 S.W.3d at 677; [16] *see also Hitachi Shin Din Cable, Ltd. v. Cain,* 106 S.W.3d 776, 786 (Tex. App.-Texarkana 2003, no pet.); *Jones v. Beech Aircraft Corp.,* 995 S.W.2d 767, 772 (Tex.App.-San Antonio 2004, pet. dism'd w.o.j.), *overruled on other grounds, BMC Software Belgium, NV. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Gessmann v. Stephens,* 51 S.W.3d 329, 339 (Tex.App.-Tyler 2001, no pet.).

In *Mink v. AAAA Dev. LLC.,* 190 F.3d 333, 336 (5th Cir.1999), the Fifth Circuit Court of Appeals characterized a website as "passive" and insufficient to confer jurisdiction, absent other contacts, where the customer could send information to the host but there was no opportunity for response by the host computer. *See Michel,* 45 S.W.3d at 677–78 (citing *Mink,* 190 F.3d at 336). The *Mink* court further held that the fact that the website contained an e-mail link did not change its decision. *Id.*

■ Exito–Taiwan's website is not interactive. It identifies catalogue items and provides contact information so that potentially interested customers may contact Exito–Taiwan for further information. It does not provide for the exchange of any

information between Exito–Taiwan and any customer. We conclude that Exito–Taiwan's website is "passive" advertising via the internet and is not a purposeful activity directed toward residents of this state. *See Michel,* 45 S.W.3d at 678; *Mink,* 190 F.3d at 336. As such, it is insufficient to trigger either specific or general jurisdiction. *Id.*

### 4. Visits by Exito–Taiwan Personnel to Texas

■ The trial court made a finding that Exito–Taiwan's officers and directors have traveled to Texas on behalf of Exito for both business and pleasure. The sole evidence of this travel is contained in Mr. Wu's deposition, in which he concedes he took a vacation to Texas one time and considered travel to Mexico to explore the potential for setting up business relations in that country. He denied conducting any business on behalf of Exito–Taiwan in Texas, and the record contains no evidence to controvert this testimony. To the extent this finding may have been relied upon to reach the trial court's conclusion of jurisdiction, we find this evidence insufficient to justify either special or general jurisdiction over Exito–Taiwan.

### 5. Appearing and Failing to Refute Jurisdiction in a Separate Lawsuit

Appellees argue that Exito–Taiwan failed to object to jurisdiction over it in separate litigation initiated in El Paso, Texas. Appellees contend that Exito–Taiwan's defending itself in that litigation constituted a purposeful direction of business

---

**16.** In the middle are "interactive" websites that allow the "exchange" of information between a potential customer and a host computer. *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex.App.-Dallas 2003, pet. denied); *Michel v.* *Rocket Eng'g Corp.,* 45 S.W.3d 658, 677 (Tex. App.-Fort Worth 2001, no pet.). Jurisdiction in cases involving interactive websites is determined by the degree of interaction. *Id.*

activities in Texas, such that specific jurisdiction should attach.

■ That Exito–Taiwan failed to contest jurisdiction in the El Paso litigation will not preclude its challenge to jurisdiction. Case law cited by Exito–Taiwan to address this argument deals with the situation where a prior lawsuit is initiated by the foreign corporation. *See Primera Vista v. Banca Serfin,* 974 S.W.2d 918, 926 (Tex.App.-El Paso 1998, no writ). Such is not the issue here, where Exito–Taiwan has undertaken no affirmative efforts to avail itself of Texas law to pursue claims on its behalf. We conclude that specific jurisdiction does not attach on this basis.

## B. General Jurisdiction

■ Appellees argue that general jurisdiction may attach because Exito–Taiwan engaged in continuous and systematic contacts with the state of Texas by selling other types of products to Texas purchasers, specifically to Intertrade Industries ("Intertrade").

We are mindful of the Texas Supreme Court's decision in *Coleman,* 83 S.W.3d at 810. There, the plaintiff sought jurisdiction over a nonresident defendant who had sold material, equipment and technology to Iraq that was used to create biological and chemical weapons. The focus was on establishing general personal jurisdiction, based upon numerous and voluminous sales of other products to Texas residents. Noting that activities inside or outside of Texas must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court, *Coleman,* 83 S.W.3d at 806, the court found that when a nonresident defendant purposefully structures transactions so as to avoid the bene-

fits and protections of a forum's laws, the legal fiction of consent no longer applies. *Id.* at 808. Title passing outside of Texas is a factor that weighs against a finding that Texas has acquired jurisdiction. *Id.* All interactions between Exito–Taiwan and Pacific Electricord, Woods or GE Lighting emphasize efforts to avoid the benefits and protections of Texas' laws and this factor would not support the attachment of jurisdiction as through those companies.

However, there is extensive evidence of on-going business between Exito–Taiwan and Intertrade, located in Fort Worth, Texas. Mr. Wu in his deposition admits doing business with this Texas company, and documentary evidence reflects multiple orders placed several times a month and payment via wire-transfer between Exito–Taiwan and Intertrade throughout 1997 and 1998. Products sold to Intertrade consisted of wire harnesses and power cords, but not extension cords. Therefore, any contacts with this company did not give rise to Trejo's causes of action and are best considered in the context of general jurisdiction.[17]

Purchase orders reflect that Exito–Taiwan shipped substantial numbers of products to Intertrade, sometimes by "Expeditors International" and sometimes by "Columbus Air." The goods were shipped directly to Intertrade's Fort Worth address. The invoices do not indicate these goods were forwarded "FOB" via any other port, and many appear to have been sent air freight directly to the Fort Worth destination. We note Mr. Wu testified that all transactions with Intertrade were "completed in Taiwan," and that Intertrade "handles their own shipment of goods." When asked why Intertrade would then send confirmation of shipments

---

**17.** We note that, despite the fact that a different specific product is involved, the interactions and family of products are substantially similar to those considered in our specific jurisdiction analysis.

to Exito, Mr. Wu responded that "maybe some shipments are really urgent, so they ask for air freight." This response does not confirm that shipment was FOB Taiwan. Further, we identified no evidence, such as that tendered with respect to other purchasers, confirming that the goods were transferred FOB Taiwan. Despite Exito–Taiwan's bald assertion to this effect in its brief (without any record reference), we cannot conclude based on the evidence before us that Exito–Taiwan did not ship its goods directly to Intertrade. We note further Mr. Wu's testimony that Exito–Taiwan sends complimentary samples of its products to Intertrade.

We recognize that general jurisdiction requires "a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *BMC*, 83 S.W.3d at 797 (citing *CSR, Ltd.*, 925 S.W.2d at 595; *Guardian Royal*, 815 S.W.2d at 228). Activity by the nonresident in the forum state must be more substantial than that which could support specific jurisdiction. *CSR*, 925 S.W.2d at 595; *Schlobohm*, 784 S.W.2d at 357. On the other hand, "where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between defendant's particular act and the cause of action." *Schlobohm*, 784 S.W.2d at 357; *see also Helicopteros*, 466 U.S. at 414–15, 104 S.Ct. 1868.

Exito–Taiwan's contacts clearly exceed those resulting from periodic mailings based solely upon affiliation or membership, which were deemed insufficient in *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex.1995). Similarly, these contacts are more than the single conversation and the purchase of products from a Texas company found to be insufficient in *BMC*, 83 S.W.3d at 796. Further,

there is no evidence that Exito–Taiwan sought to structure its transactions with Intertrade to avoid the benefits and protections of Texas' laws; therefore we are not precluded from applying the legal fiction of consent. *See Coleman*, 83 S.W.3d at 808. We conclude that Exito–Taiwan failed to satisfy its burden to negate general jurisdiction. *See M.G.M. Grand*, 8 S.W.3d at 408.

We conclude that the business interactions between Exito–Taiwan and Intertrade were not random, fortuitous, or attenuated contacts. *Coleman*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 226. Rather, they were systematic and continuous, such that Exito–Taiwan "purposefully availed" itself of the privilege of conducting activities in Texas and could reasonably have anticipated being called into a Texas court. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174; *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559.

We therefore find that general jurisdiction properly attaches.

## C. Traditional Notions of Fair Play and Substantial Justice

Under the second prong of the test for due process, a party opposing a non-resident defendant's special appearance must show that the exercise of in personam jurisdiction comports with fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Because the minimum contacts analysis now encompasses so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail a fair play analysis. *Schlobohm*, 784 S.W.2d at 357–58 (citing *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026; *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174). This analysis is separate and distinct from the minimum contact issue, though, and must be conducted. *Id.* We therefore consider whether, despite the ex-

istence of minimum contacts, there are any reasons why our assertion of jurisdiction in this case would offend traditional notions of fair play and substantial justice.

Appellees argue that the assertion of personal jurisdiction over Exito–Taiwan does not offend traditional notions of fair play and substantial justice for the following reasons: (1) Exito–Taiwan has previously conducted business in the state and has previously submitted to the jurisdiction of a Texas court; (2) Texas has a significant interest in resolving products liability actions; (3) the interests of the plaintiffs and other co-defendants are best served by proceeding in Texas where most fact witnesses reside; (4) the most efficient resolution of the matter would be to proceed in one forum, rather than in separate actions; and (5) Texas is not an inappropriate forum vis-a-vis the shared interests of the other states.

We have concluded that the quality, nature and extent of Exito–Taiwan's activity in Texas justifies a conclusion that it could expect to be called to our courts. Nothing in the record suggests that litigation in a Texas court would be excessively burdensome or inconvenient. Mr. Wu indicated he would need a translator and would need to travel to Texas. Nothing indicates this constitutes a substantial hardship. Mr. Wu testified that he is unfamiliar with Texas law. However, his testimony also reflects his company has available through its insurer counsel knowledgeable in Texas law. We note further that the nature of the underlying dispute is not "international," but rather calls for the application of Texas law designed to protect Texas residents. *Cf. Kintron*, 163 S.W.3d at 132.

We conclude (1) no excessive burden will be placed upon Exito–Taiwan' (2) Texas has a strong interest in adjudicating this dispute; (3) appellees have an interest in securing convenient and effective relief;

(4) the assertion of jurisdiction by the Texas courts will enable the most effective and efficient resolution of the dispute; and (5) the assertion of jurisdiction comports with the interstate judicial system's interest in obtaining the most effective resolution of the controversy and the states' shared interest in furthering fundamental substantive social policies. *See York*, 141 S.W.3d at 845–46. We conclude that the exercise of jurisdiction over Exito–Taiwan by a Texas court does not offend traditional notions of fair play and substantial justice.

## VI. CONCLUSION

With respect to Exito–Philippines, the underlying order of the trial court is reversed and rendered, as that court has no jurisdiction over Exito–Philippines. Because we determine the trial court rendered the proper judgment as to Exito–Taiwan, we do not reverse any of the trial court's conclusions of law. *BMC*, 83 S.W.3d at 794. We affirm the underlying order of the trial court to the extent it concludes that jurisdiction may properly be asserted over Exito–Taiwan. We make no conclusions with respect to the other findings identified by the trial court. We remand for further proceedings.