COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-297-CV

 

 

DANNY MATEER AND                                                                     APPELLANTS

JOAN
MATEER

 

                                                             V.

 

CABOOL LEASE, INC.                                                                          APPELLEE

 

                                                       ------------

 

               FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I.  Introduction

This
is an interlocutory appeal by Appellants Danny Mateer and Joan Mateer from the
trial court=s
order granting Appellee Cabool Lease, Inc.=s
special appearance in a personal injury action filed by the Mateers.[2]  For the reasons set forth below, we will
affirm the trial court=s order.








II.  Factual Background

In
2006, Danny Mateer worked as a milk truck driver for Milk Transport Services,
L.P. (MTS) and/or Western Dairy Transport, L.P. 
While Danny was pumping milk into a milk trailer, the trailer=s
valve shut on Danny Mateer=s
hand, severely injuring him.  The Mateers
filed a personal injury suit against several entities[3]
and included a products liability cause of action against Cabool Lease,
alleging that Cabool Lease had sold the allegedly defective milk trailer at
issue to MTS. 

III.  Cabool Lease=s
Special Appearance

Cabool
Lease filed a special appearance and supporting evidence.  The Mateers filed a response and supporting
evidence, arguing  that Cabool Lease had
continuous and systematic contacts with Texas sufficient to subject Cabool
Lease to the general jurisdiction of Texas courts and had the minimum contacts
required to subject Cabool Lease to specific jurisdiction in Texas courts.  The trial court held a hearing on Cabool
Lease=s
special appearance and granted it. This interlocutory appeal followed. 

IV.  Review of Trial Court=s
Granting of Special Appearance

In
their sole issue, the Mateers argue that the trial court erred by granting
Cabool Lease=s
special appearance 








A. 
Standard of Review

Whether
a trial court has personal jurisdiction over a defendant is a question of law,
and we review the trial court=s
ruling on a special appearance de novo.  BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  A trial court must frequently resolve fact
questions before deciding the jurisdictional question and where, as here, the
trial court does not enter express findings of fact and conclusions of law regarding
its ruling on a special appearance, we infer all fact findings necessary to
support the trial court=s ruling.  Id. at 794B95.  When a reporter=s
record is included in the appellate record, as we have here, however, a trial
court=s
implied findings may be challenged for legal and factual sufficiency.  Id.; TravelJungle v. Am. Airlines,
Inc., 212 S.W.3d 841, 845 (Tex. App.CFort
Worth 2006, no pet.).  Once it is
determined that the trial court=s
findings are supported by sufficient evidence, or if the material facts are
undisputed, the reviewing court decides as a matter of law whether those facts
negate all bases for personal jurisdiction. 
BMC Software, 83 S.W.3d at 794B95.

B. 
Undisputed Material Facts

The
material facts relied upon by each side in support of, or in opposition to,
Cabool Lease=s
special appearance are undisputed. 
Cabool Lease argued that the facts established that it was not subject
to the jurisdiction of Texas courts, while the Mateers argued that the facts
established that Cabool Lease was subject to the jurisdiction of Texas courts.













The
undisputed facts presented by Cabool Lease establish that MTS has locations in
Missouri, Kansas, Texas, and New Mexico. 
In 1998, MTS purchased twenty-seven bulk milk trailersCincluding
the one that injured MateerCfrom
Cabool Lease in Cabool, Missouri.  Cabool
Lease did not control where MTS utilized the milk trailers that it purchased,
nor did Cabool Lease service the milk trailers that it sold.  Cabool Lease did not have any contact with
the Mateers concerning the facts made the subject of this lawsuit.  Cabool Lease is a Missouri company with its
principal place of business in Cabool, Missouri; it has not been incorporated
in any other state besides Missouri; it has not been authorized to do business
in any other state besides Missouri; and it does not maintain a place of
business anywhere except Cabool, Missouri. 
Cabool Lease is not a corporate entity formed under the laws of Texas,
and it does not maintain a registered agent for service in Texas.  Cabool Lease has no employees in Texas and
does not regularly recruit Texas residents to work for Cabool Lease; it does
not maintain a place of business in Texas and does not have any offices or
other facilities in Texas; it does not own any real or personal property in
Texas; it does not maintain any bank accounts or post office boxes in Texas; it
does not pay any taxes to any local or state taxing authorities in Texas; it
does not market or ship any products to individuals or corporations in Texas;
it does not operate a website in order to promote its business; it does not
have a telephone number in Texas; it does not send sales or marketing brochures
to people or corporations in Texas; it does not have company meetings in Texas;
it does not purposefully advertise in or direct marketing efforts to Texas with
an intent to solicit business from Texas; it does not advertise in any Texas
newspapers; it has never before been involved in a lawsuit in Texas; and it has
never had an occasion outside of this lawsuit to call anyone in Texas or
receive phone calls from Texas.








The
undisputed facts presented by the Mateers establish that from 1998 to the
present, ninety percent of Cabool Lease=s
business has consisted of leasing and financing equipment such as milk trucks
and milk trailers to entities affiliated with Cabool Lease, such as MTS and
Western Dairy.[4]  Both MTS and Western Dairy are registered to
do business in Texas, maintain registered agents in Texas, and maintain
facilities of operation in Texas.  MTS
operated a total of eight facilities from 1998 through 2006, with two
facilities located in the Texas cities of Stephenville and El Paso.  During the late 1990s, Cabool Lease leased to
or financed for MTS approximately seventy-five milk trucks and trailers for use
in its eight facilities, including those facilities located in Stephenville and
El Paso.  In or about 2007, Western Dairy
purchased the trucks and operation of MTS. 
Cabool Lease continues to lease milk trailers to Western Dairy, which
continues to operate from the same facilities that had been operated by MTS,
including the Stephenville and El Paso locations, and Western Dairy continues
to make up roughly ninety percent of Cabool Lease=s
customer base.  Cabool Lease=s
president is also the president of MTS, and Cabool Leases=s
president admitted in his deposition that he anticipated that some of the milk
trailers that Cabool Lease sold to MTS might be used in one of MTS=s
Texas facilities.

C.  Trial Court=s Implied Finding of
No Minimum Contacts 

Is Supported by the
Evidence

 













We
need not undertake a detailed specific jurisdiction and general jurisdiction
analysis because here the trial court=s
implied finding that Cabool Lease simply had no contacts at all with the State
of Texas of the sort that will support jurisdiction over Cabool Lease in Texas
courts is supported by the undisputed special appearance evidence.  The contacts pointed to by the Mateers do
not, as a matter of law, support specific or general jurisdiction by Texas
courts over Cabool Lease.  For example,
the Mateers argue that Cabool Lease=s
conduct in leasing or selling milk trailers and trucks to MTS for a decade
constituted continuous and systematic contacts with Texas.  But the sales occurred and the leases were
executed in Missouri, not Texas.  And the
fact that MTS, a third party, does business in Texas does not convert Cabool
Lease=s
conduct in Missouri into doing business in Texas.  See Michiana Easy Livin=
Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005)
(explaining that only the defendant=s
contacts with the forum count, not the unilateral activity of another party or
third person, like MTS here); TravelJungle, 212 S.W.3d at 846 (same); Karstetter
v. Voss, 184 S.W.3d 396, 403 (Tex. App.CDallas
2006, no pet.) (same).  The Mateers also
point out that Cabool Lease placed the allegedly defective milk trailer into
the stream of commerce with the expectation that it would enter Texas and be
used in Texas by Texas residents.  As
evidence of this expectation, the Mateers rely on the deposition testimony of
Cabool Lease=s
president that he anticipated that the milk trailers sold to MTS might be used
at MTS=s
Texas locations.  As a matter of law,
placing a product into the stream of commerce with awareness that the product
might end up in a particular state is not the type of purposeful contact with
Texas that will support Texas courts=
exercise of personal jurisdiction.  See
CMMC v. Salinas, 929 S.W.2d 435, 438 (Tex. 1996) (stating that a defendant=s
awareness that the stream of commerce may or will sweep the product into the
forum state does not convert the mere act of placing the product into the
stream into an act purposefully directed toward the forum state); see also
See Exito Electronics, Co. v. Trejo, 166 S.W.3d 839, 855 (Tex. App.CCorpus
Christi 2005, no pet.) (holding that mere knowledge that product would
ultimately reach Texas, when coupled with the deliberate structuring of
business to avoid purposeful contact with Texas, is insufficient in itself to
constitute minimum contacts that would trigger specific jurisdiction);
Botter v. Am. Dental Ass=n,
124 S.W.3d 856, 864 (Tex. App.CAustin
2003, no pet.) (holding that the fact that the ADA tests and approves products
that may be sold in Texas does not evidence a purposeful contact with Texas).[5]  The Mateers also point to the fact that Cabool=s
president was also the president of MTS and traveled to Texas for an MTS
meeting.  Because, as mentioned earlier,
piercing of any corporate veil between MTS and Cabool Leasing is not an issue,
travel for MTS to Texas is not a contact by Cabool Leasing.  See Michiana, 168 S.W.3d at
785.  And, moreover, Cabool Lease=s
president testified that his role as president of Cabool Lease did not ever
require him to travel because Cabool Lease Awas
just a financing institution and had no reason to travel anywhere else.@








Thus,
the trial court=s implied finding that
Cabool Lease had no contacts with Texas is supported by the special appearance
evidence.  See BMC Software, 83
S.W.3d at 794; see also Asshauer v. Farallon Capital Partners, L.P., No.
05-05-01219-CV, 2008 WL 367619, at *10 (Tex. App.CDallas
Feb. 12, 2008, no pet.) (holding that defendant corporation lacked minimum
contacts sufficient to support either specific or general jurisdiction when
chairman=s
affidavit stated that corporation was a California corporation, did not
maintain a registered agent for service of process in Texas, did not maintain a
place of business in Texas, had no employees in Texas, and did not own or lease
real property in Texas).

We
therefore hold that the trial court did not err by granting Cabool Lease=s
special appearance.  Accordingly, we
overrule the Mateers= sole issue.

V.  CONCLUSION

Having
overruled the Mateers= sole issue, we affirm the
trial court=s
order granting Cabool Lease=s
special appearance.

 

SUE WALKER

JUSTICE

 

PANEL:
LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:  April 15, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Civ. Prac.
& Rem. Code Ann. ' 51.014(7) (Vernon
2008).





[3]The Mateers= claims against these
entities remain pending in the trial court.





[4]The Mateers concede
in their reply brief that they do not attempt to base jurisdiction on any type
of piercing the corporate veil theory; hence, only Cabool Lease=s contacts with Texas
are relevant to our analysis. 





[5]In a post-submission
letter brief, the Mateers argue that the Texas Supreme Court=s recent decision in Spir
Star AG v. Kimich mandates a holding that specific jurisdiction exists over
Cabool Lease in Texas.  No. 07-0340, 2010
WL 850151, at *1 (Tex. Mar. 12, 2010). 
Spir Star AG, however, intentionally targeted Texas as the marketplace for
its products and established a distributorship in Texas for that purpose.  Id. 
As discussed above, Cabool Lease did not intentionally target Texas as a
marketplace; Cabool Lease did not establish a distributorship in Texas.  The facts in Spir Star AG are not
analogous to the facts here.