**HITACHI SHIN DIN CABLE, LTD., Appellant,**

v.

**Wanda Lou CAIN and Marcus Stribling, Appellees.**

**No. 06–02–00078–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 11, 2002.

Decided May 5, 2003.

Susan L. Hays, Akin, Gump, Strauss, Hauer & Field, LLP, Dallas, for appellant.

Gregory R. Ave, Touchstone, Bernays, et al, Dallas, for appellees.

Before MORRISS, C.J., ROSS and GRANT,* JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In two points of error, Hitachi Shin Din Cable, Ltd. (HSD) contends the trial court erred by denying HSD's special appear-

---

* Ben Z. Grant, Justice, Retired, Sitting by Assignment

1. The plaintiffs identified the defective product as "SHIN DIN SD–008 E84541 (plug) + SS PT–1 E56356 VW1 18AWGX2C TA HSING (wiring)." HSD did manufacture an item numbered SHIN DIN SD–008 E84541 plug +

ance and by sustaining Wanda Lou Cain's and Marcus Stribling's objections to HSD's affidavits in support of its special appearance. For the reasons set forth below, we reverse the trial court's order and render judgment dismissing the claims against HSD for want of jurisdiction.

### Factual and Procedural Background

On September 25, 1999, between 5:00 and 5:25 p.m., a clock radio in the home of Wanda Lou Cain caught fire and caused structural damage to her home. Cain sued Wal–Mart (who allegedly sold the clock radio), HSD (the alleged manufacturer of the electrical plug [1]), and a second Chinese corporation (the alleged manufacturer of the electrical wiring) claiming the defendants were strictly liable. Cain's insurance carrier, Texas Farm Bureau Insurance, has been subrogated to her claims.

According to the record before us, Hitachi Cable (HC) directly owns approximately 28% of HSD's common stock and indirectly owns an additional 22% of HSD's common stock. HSD has six executive directors, none of whom hold a position with HC. Two nonexecutive directors of HSD hold staff (nondirector) positions with HC. There are contractual agreements for technical support between HC and HSD, but none of those agreements involve the plug at issue in this case. HC's financial statements are prepared without consolidating HSD's financial figures into them. The two companies file separate tax returns in China. HSD is a corporate citizen of Hong Kong, China.

---

S PT–1, but only until 1993. HSD did not sell its plug and wiring combination to anyone in the United States, but manufactured it for distribution in Hong Kong. HSD suspects the wire and plug at issue in this case are counterfeit.

Several years ago, HSD contracted with Thomson Multimedia, a French company. The laws of France and China govern the primary Thomson contract. The contract does not cover the sale, purchase, or delivery of any tangible product deliverable in Texas. Instead, HSD receives purchase orders from Thomson's Indianapolis, Indiana, affiliate directing HSD to deliver certain products—none of which include the plug made the subject of this lawsuit—to an El Paso freight agent that facilitates transport of HSD's products to Thomson's offices in Juarez and Chihuahua, Mexico. The HSD components are then incorporated into Thomson products in Mexico for distribution elsewhere. No HSD products are introduced into the stream of commerce in Texas. The shipping contract with Thomson's subsidiary is governed by the laws of Indiana, France, or China.

In the trial court, HSD filed a verified special appearance challenging the trial court's *in personam* jurisdiction over HSD. HSD supported its special appearance with two affidavits from one of HSD's directors, Chan Ka Ming. Chan's affidavits state HSD has not registered as a foreign corporation with Texas' Secretary of State, has no offices in Texas, does not have a registered agent for service in Texas, and does not directly sell any of its products to persons or companies in Texas. The affidavits also declare HSD has not specifically targeted any of its advertising to people or companies in Texas.

By parsing individual phrases of the affidavits in support of the special appearance, Cain argued before the trial court that HSD's special appearance was supported by a legally inadequate affidavit, thereby converting the special appearance into a general appearance and subjecting HSD to personal jurisdiction in Texas. HSD asserted the affidavits were legally adequate to show no "minimum contacts" with Texas

and any semantic problems with the language of the documents was a product of cultural and language barriers rather than an attempt to hide from liability. HSD also argued it was not subject to specific jurisdiction. Cain does not assert HSD had ever maintained an office, warehouse, business address, telephone listing, answering service, or other business location in Texas. After presentation of evidence and argument of counsel, the trial court denied the special appearance, issued findings of fact, and HSD filed this interlocutory appeal.

### Personal Jurisdiction

 Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). On appeal, we review *de novo* the trial court's determination to grant or deny a special appearance. *Coleman*, 83 S.W.3d at 806; *Marchand*, 83 S.W.3d at 794. To resolve the issue of jurisdiction, the trial court must frequently also determine questions of fact. *Coleman*, 83 S.W.3d at 806; *Marchand*, 83 S.W.3d at 794. Our appellate review may also require examination of the trial court's resolution of a factual dispute, but if no findings of fact are issued, the reviewing court should presume the trial court resolved all factual disputes in favor of its judgment. *Coleman*, 83 S.W.3d at 806; *Marchand*, 83 S.W.3d at 795.

 The Texas long-arm statute permits courts to exercise personal jurisdiction over a nonresident defendant, but such power is limited by the federal constitutional requirements of due process. *Marchand*, 83 S.W.3d at 795 (citing TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997); *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977)). This limitation is not exceeded when (1)

the defendant has established minimum contacts with Texas, and (2) the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice. *Marchand*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). On filing a special appearance, "the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff." *Coleman*, 83 S.W.3d at 807 (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)).

"Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific or general jurisdiction." *Marchand*, 83 S.W.3d at 795 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal Exch. Assurance, Ltd. v. English China*, 815 S.W.2d 223, 226 (Tex. 1991)). The purpose of the minimum contacts analysis is to prevent a foreign corporation from being haled into Texas courts when its relationship to Texas is so remote that it could not reasonably anticipate having to defend itself in a Texas court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

"Specific jurisdiction is established if the defendant's liability arises from or is related to an activity conducted within the forum." *Marchand*, 83 S.W.3d at 796 (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 228). Additionally, the defendant's contacts with the forum must be purposeful. *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 227. General jurisdiction exists when the defendant's contacts with Texas "are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Marchand*, 83 S.W.3d at 796 (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 228; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)).

Nonresident defendants who have "purposefully availed" themselves of the privileges and benefits of conducting business in Texas have sufficient minimum contacts with Texas to subject these defendants to general personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Marchand*, 83 S.W.3d at 795. Minimum contacts may not be shown through the unilateral acts of a third party, nor may random, fortuitous, or attenuated contacts with Texas provide the sole justification to exercise personal jurisdiction. *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226. General jurisdiction may only be exercised when the foreign corporation's contacts in Texas are continuous and systemic. *Marchand*, 83 S.W.3d at 797; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–15, 104 S.Ct. 1868. To negate the exercise of general jurisdiction, the nonresident defendant must show it does not conduct substantial activities within the forum. *See Marchand*, 83 S.W.3d at 797; *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). Foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with Texas. *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559; *Marchand*, 83 S.W.3d at 795 (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 227).

Two recent Texas Supreme Court opinions have outlined the law governing minimum contacts analysis with respect to foreign corporations. In *Marchand*, a

Belgian citizen negotiated in Belgium an employment contract with BMC Software Belgium (BMCB), a wholly-owned subsidiary of Houston-based BMC Software. *Marchand,* 83 S.W.3d at 793. The terms of the contract called for work to be completed in Belgium, with bonuses to be paid in stock options. The terms of Marchand's employment were governed by Belgian law. BMCB later fired Marchand, who sued BMCB in Texas under various theories for recovery. Marchand claimed Texas courts had personal jurisdiction over BMCB because the Belgian company was a wholly-owned subsidiary of a company headquartered in Texas. *Id.* The Texas Supreme Court ruled that the nature of BMCB's contacts with Marchand arose *outside* of Texas from a contract that was negotiated and formed in Europe. Thus, Marchand's damages under a breach of contract claim arose outside of Texas and BMCB was not subject to specific, personal jurisdiction. *Id.* Additionally, even though BMCB purchased products from its parent company in Texas for distribution in Europe, these contacts were insufficient to subject BMCB to general jurisdiction. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S at 415–18, 104 S.Ct. 1868 ("mere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions")). The Texas Supreme Court then found neither general nor specific jurisdiction had been established and rendered judgment dismissing Marchand's suit against the Belgian company. *Marchand,* 83 S.W.3d at 801.

In *American Type Culture Collection, Inc. v. Coleman,* veterans of the 1991 Persian Gulf War sued, alleging ATCC sold material, equipment, and technology to Iraq that was used to create biological and chemical weapons. *Coleman,* 83 S.W.3d at 804. Coleman alleged ATCC, a storage facility for toxic bio-organisms and cultures located in Maryland, was subject to personal jurisdiction in Texas because 3.5% of ATCC's worldwide sales arose from contracts with Texas (including an agreement with the University of Texas Southwestern Medical Center in Dallas). The Texas Supreme Court found that personal jurisdiction did not exist: ATCC had purposefully structured its transactions to avoid the benefits and protections of Texas law by expressly stating that its contracts were governed by another state's laws, title to all of ATCC's sales to Texas purchasers passed outside of Texas, and ATCC's purchases and trips related to Texas vendors were by themselves insufficient to support the exercise of general jurisdiction. Additionally, the contracts giving rise to the cause of action had no relationship to Texas; therefore, specific jurisdiction did not exist. *Id.*

### Analysis

In the case before this Court, Cain contends HSD's contacts with Texas can be found in three places: (1) HSD's contract with Thomson to ship products to El Paso, (2) the corporate structure and relationships of the various Hitachi entities with HSD, including Hitachi America Limited (the American subsidiary of Hitachi, Ltd., and an entity Cain presumes has ties to Texas), and (3) HSD's internet presence. Cain does not allege that jurisdiction exists because HSD has maintained an office, warehouse space, a mailing address, a telephone listing, subscribed to an answering service, or has any other direct business location in Texas. *Cf. Michel v. Rocket Eng'r Corp.,* 45 S.W.3d 658, 666–72 (Tex. App.-Fort Worth 2001, no pet.) (first inquiry in general jurisdiction analysis is whether nonresident business has created "general business presence" in forum state).

The last petition on file with the trial court before the hearing on HSD's special appearance was Cain's first amended petition.[2] Cain alleged HSD was subject to personal jurisdiction in Texas because HSD "is a subsidiary of Hitachi Cable, Ltd., and a substantial number of its products are supplied for use in products sold in Texas." The petition also alleged that the plug on the clock radio "was manufactured by [HSD] and was identified as 'SHIN DIN SD–008 E84541.'" Cain's petition contains no allegations that minimum contacts with Texas can be shown through the defendant's internet presence. Cain's claim that HSD's internet presence should be considered in making a minimum contacts analysis appears—for the first time— on page five of her April 10, 2002, response to HSD's special appearance. Cain filed this document five calendar days before the hearing on HSD's special appearance.[3] Cain's response alleges HSD is subject to general personal jurisdiction because the website boasts HSD has customers "all over the world," "invites customers to 'Call our sales team immediately,'" provides a copyright page claiming complete ownership of the internet site by Hitachi Cable, Ltd., and displays cables that have been certified by Underwriters Laboratories Inc. Cain claims the UL listing is evidence of HSD's willingness to submit to the jurisdiction of foreign markets in the United States, including Texas.

*1. The Thomson Contract.*

 Cain first claims HSD has subjected itself to personal jurisdiction in Texas because it ships goods to El Paso.

Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174. This "purposeful availment" requirement ensures that a nonresident defendant will not be haled into a jurisdiction based solely upon "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868; *World–Wide Volkswagen Corp.,* 444 U.S. at 298, 100 S.Ct. 559.

*Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 226.

In the case at bar, the evidence demonstrates that HSD contracted with Thomson, a French company, for the shipment of certain goods. The terms of the contract provided that Thomson directed where those goods would be shipped. Therefore, HSD's direct contacts with Texas occur at the direction of a third party. Such contact cannot be said to meet the requirements for "purposeful availment" because this contact comes at the direction of a third party. *See Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174. The contract and its performance are insufficient to provide a basis for the exercise of general personal jurisdiction. Additionally, as there was no evidence that the plug that allegedly caused the fire was shipped as part of the Thomson contract, and because

---

**2.** Cain filed her first amended petition on September 24, 2001. The trial court heard arguments on HSD's special appearance on April 15, 2002. Cain filed her second amended petition on May 10, 2002. Thus, for determining jurisdiction, we must look to all filings as of April 15, 2002.

**3.** HSD did not object to lack of time to prepare for the hearing. HSD's counsel presented evidence and argument on HSD's internet presence in relationship to the minimum contacts analysis at the April 15 hearing.

there was evidence to refute such a claim, the Thomson contract supports the exercise of neither specific nor general jurisdiction by a Texas trial court. *See Coleman,* 83 S.W.3d at 806, 810; *Marchand,* 83 S.W.3d at 796–97.

### 2. Hitachi's Corporate Structure.

 Second, Cain claims HSD "is a subsidiary of [HC] and a substantial number of its products are shipped for use in products sold in Texas." Based on HC's contacts with Texas, Cain argues the trial court may exercise personal jurisdiction over HSD.

Personal jurisdiction may exist over a nonresident defendant if the relationship between the foreign corporation and its parent corporation that does business in Texas is one that would allow the court to impute the parent corporation's "doing business" to the subsidiary. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); *Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir. 1978). The rationale for exercising jurisdiction is that "the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" *Hargrave,* 710 F.2d at 1159 (citations omitted); see also *Conner v. ContiCarriers & Terminals, Inc.,* 944 S.W.2d 405, 418 (Tex.App.-Houston [14th Dist.] 1997, no writ). The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation. *Walker,* 583 F.2d at 167; *Conner,* 944 S.W.2d at 418–19; *see also Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 375 (Tex.1984)....
To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. *Conner,* 944 S.W.2d at 418–19 (discussing *Hargrave,* 710 F.2d at 1160; *Walker,* 583 F.2d at 167). But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *See Hargrave,* 710 F.2d at 1160; *Conner,* 944 S.W.2d at 419; *see also Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 573 (Tex.1975).

*Marchand,* 83 S.W.3d at 798–99.

 HSD presented evidence that HC *directly* owns 28% of HSD's common stock and *indirectly* owns approximately 22% of HSD's common stock. At the hearing, Cain conceded she had no evidence that HC's direct and indirect ownership of HSD amounted to more than 50% of HSD's total ownership. There is no evidence before this Court that HC's stock ownership gives it actual control of HSD's day-to-day operations. Even *complete* stock ownership does not, alone, provide the necessary proof to allow jurisdiction over the parent to create jurisdiction over the subsidiary. *See Marchand,* 83 S.W.3d at 793, 799.

Chan's affidavits declare HSD and HC have separate managerial staffs, file separate tax returns, and are, in essence, separate companies. Cain presented no evidence to refute HSD's position that the two companies are operated by separate managerial staffs. The only evidence Cain offered to show common management is information that HSD's website contains links to HC's website and that HC retains the copyright to the content of HSD's website. There was no showing of duplicate

corporate officers, nor of control of HSD's day-to-day affairs by HC officials. In fact, HSD expressly denied such accusations by Cain during the discovery process. That HC claims the copyright to HSD's web content demonstrates nothing more than HC's provision of technical support to HSD's website.[4] It does not demonstrate HSD is the alter ego of HC, nor does it demonstrate control of HSD's corporate policy or execution of HSD's day-to-day affairs. The sole Securities and Exchange Commission (SEC) filing in the record before us is for Hitachi, Ltd.—not HSD or HC—and Hitachi, Ltd.'s SEC filing does not list HSD as a subsidiary of either Hitachi, Ltd., or HC. *Cf. id.* at 799. Nor does HC's reference to HSD in its annual financial report, without more, support an alter ego claim. *See id.* Therefore, the evidence in the record is insufficient to establish that HSD is the alter ego of HC for the purpose of exercising general personal jurisdiction over HSD based on HC's contacts with Texas. *See id.* (parent company's Texas contacts not attributed to subsidiary because alter ego not established).

### 3. HSD's Internet Presence.

▮▮▮ Finally, Cain suggests the trial court may properly exercise personal jurisdiction over HSD based on HSD's internet presence. "The Internet is a global communications network that makes it possible to conduct business throughout the world entirely from a desktop." *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.). In Texas, internet usage is judged on a "sliding scale" or "spectrum" for the purpose of jurisdictional analysis. *Id.;*

*Riviera Operating Corp. v. Dawson*, 29 S.W.3d 905, 911 (Tex.App.-Beaumont 2000, pet. denied).

At one end of the scale are situations in which a defendant clearly does business over the Internet by entering into contracts with residents of other states that involve the knowing and repeated transmission of computer files over the Internet. At the other end of the scale are passive web site situations. A passive web site, which solely makes information available to interested parties, is not grounds for personal jurisdiction.... In the middle are "interactive" web sites, which permit a user to exchange information with the host computer (the person or company maintaining the web site). In these cases, the exercise of jurisdiction is determined by examining the level of interactivity between the parties on the web site.

*Jones*, 995 S.W.2d at 772–73 (citations omitted).

At the special appearance hearing, HSD argued its website was passive. Cain presented no evidence HSD transacted business over the internet with Texas residents. Instead, the evidence Cain submitted regarding HSD's website suggests HSD might have a customer base in the United States, but that same evidence does not specifically state HSD has customers in Texas. The record also shows that HC's website permits internet users to e-mail questions or submit comments to HC, but there is no evidence those same users may e-mail questions or comments to HSD through HC's website. The record does not contain any evidence that someone in Texas would be able to

---

**4.** The "License and Technical Assistance Agreement" between HC and HSD requires that HSD "not disclose or license to any third parties TECHNICAL INFORMATION in written, printed, oral or other form received from HCL ...." for a period of five years beyond the expiration of the contract. Given this secrecy agreement, it is not surprising HC retained the copyright to HSD's website.

complete a purchase order for HSD products over the internet. Based on the evidence before us, we believe HSD's website has such an extremely low level of interactivity that HSD may not fairly be subjected to general personal jurisdiction in Texas.

Additionally, the record contains no evidence that Texans have ever completed transactions over the internet with HSD. This information, if entered into evidence and included in the appellate record, would strongly support the trial court's exercise of general personal jurisdiction over a foreign corporation such as HSD. Absent such evidence, there is nothing to show HSD has any minimum contacts with Texas via its internet presence. We sustain HSD's first point of error.

### 4. Unchallenged Statements in Chan's Affidavits.

Nonetheless, if Chan's affidavits were legally insufficient to support HSD's special appearance, then HSD's special appearance would be waived and its filings thereby converted into a general appearance subjecting HSD to general jurisdiction in Texas under the doctrine of waiver. See Tex.R. Civ. P. 120a(1) (every appearance that is not a special appearance is a general appearance). To refute this possibility, HSD contends in its second appellate issue the trial court erred by sustaining Cain's objections to Chan's affidavit.

In the hearing before the trial court on HSD's special appearance, Cain lodged objections to five of the twelve paragraphs in one of Chan's affidavits.[5] Her objections may be grouped into two areas: (1) the affidavits did not demonstrate any basis for Chan's personal knowledge, and (2) the affidavits were vague and contained limitations. The trial court held both affidavits,

in their entirety, were not based on personal knowledge, were vague and ambiguous, and were merely based on "information and belief." The trial court then held HSD was subject to the court's general jurisdiction.

First, if the statements in an affidavit clearly show the affiant was testifying from personal knowledge, the affidavit does not need to specifically state it was made on personal knowledge. *Closs v. Goose Creek Consol. Indep. Sch. Dist.*, 874 S.W.2d 859, 868 (Tex.App.-Texarkana 1994, no writ). Chan's affidavit stated, "My name is Chan Ka Ming. I am capable of making this affirmation. The facts stated in this affirmation are within my personal knowledge, are true and correct, and are as follows . . . ." Chan's second affidavit begins with the same language. We believe such language satisfies the requirement that an affidavit be made on personal knowledge. To the degree that the trial court struck the affidavits on the basis that Chan's testimony was given outside his personal knowledge, the trial court erred because the record clearly refutes such a holding and there is no evidence in the record to contradict Chan's claim that his affidavit was based on personal knowledge.

Second, if a trial court legitimately finds certain parts of an affidavit improper, it should still consider the remainder of the affidavit in determining whether the special appearance should be granted. *Cf. Grotjohn Precise Connexiones Int'l, S.A. v. JEM Fin., Inc.*, 12 S.W.3d 859, 867 (Tex.App.-Texarkana 2000, no pet.). In this case, even if the trial court ignores all those passages in the first affidavit to which Cain objects, the remaining portions of the first affidavit and the second affidavit (to which Cain made no objection) are sufficient to negate the

---

**5.** Cain did not object to any portions of Chan's second affidavit.

plaintiff's grounds for specific and general jurisdiction. The second affidavit declares HSD's only contacts with Texas come at the direction of a third party and involve transfer of products to an El Paso freight agent for transportation to Mexico; otherwise, HSD has no contacts with Texas. Cain did not object to this portion of the supplemental affidavit; its evidentiary value to negate the exercise of general jurisdiction therefore went unchallenged. As previously discussed, contacts with the forum state that occur at the direction of a third party may not justify the exercise of general jurisdiction. *See Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226. Paragraph five of Chan's first affidavit (to which Cain did not object) also clearly states HSD does not do any business in Texas. And Cain conceded before the trial court that HSD did not manufacture the plug described in her original or amended petitions. Accordingly, the affidavits contained sufficient remaining evidence—even if the objected-to evidence is excluded—to negate the exercise of both general and specific personal jurisdiction by a Texas trial court over HSD. The trial court erred by holding to the contrary.

We reverse the trial court's decision, grant the special appearance of Hitachi Shin Din Cable, Ltd., and dismiss all claims herein against it for lack of jurisdiction.