Opinion issued September 27, 2007














In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00199-CV






PELICAN STATE PHYSICAL THERAPY, L.P., Appellant


V.


MARC BRATTON, Appellee






On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 2004-56851





MEMORANDUM OPINION ON REHEARING


 The Court's opinion and judgment in the above-referenced appeal issued on
August 30, 2007. After due consideration, and within its plenary power, the Court
sua sponte withdraws its August 30, 2007 opinion and judgment and issues today's
opinion and judgment in their stead. See Tex. R. App. P. 19.1 (setting plenary power
of courts of appeals over their judgments).

 Appellant, Pelican State Physical Therapy, L.P. ("Pelican State"), appeals from
a final judgment dismissing its claims against appellee, Marc Bratton, which
judgment the court rendered upon granting Bratton's special appearance. We
determine (1) whether the trial court's failure to file findings of fact and conclusions
of law constitutes error, (2) whether the trial court erred in granting Bratton's special
appearance, and (3) whether Pelican State's appeal is frivolous so as to merit
sanctions on appeal. We affirm the judgment, and we deny Bratton's motion for
appellate sanctions against Pelican State. 

Background


 The material facts are largely undisputed. Pelican State was a Texas-organized
and Texas-registered limited partnership that did business as Audubon Physical
Therapy and operated a physical-therapy clinic in Slidell, Louisiana ("the Slidell
clinic"). Pelican State maintained its principal office in Houston, Texas. Pelican
State was formed by U.S. Physical Therapy, Inc. ("USPT"), a Nevada corporation
with its corporate headquarters and principal place of business in Houston, Texas. 
USPT developed, managed, or operated physical-therapy clinics in 35 states through
limited partnerships or other corporate entities. USPT or one of its Texas-based
subsidiaries was typically the general partner or a limited partner in the established
partnerships. USPT developed the Slidell clinic.

 There were two limited partners in Pelican State. The first was U.S. Physical
Therapy, Ltd., a wholly owned subsidiary of USPT that was located in Houston. The
second limited partner was Joe Zimmerman ("Zimmerman"), who served as the
executive director of the Slidell Physical Therapy Clinic in Slidell, Louisiana. 
Zimmerman was a resident of Louisiana.

 Bratton was also a Louisiana resident. He was licensed as a physical therapist
in Louisiana and practiced there, not in Texas. Bratton did not have a registered
agent for service in Texas, did not have a Texas bank account, did not own property
in Texas, and had no employees of his own in Texas.

 In the summer of 2000, Bratton responded to a "blind" newspaper
advertisement in the Times-Picayune, a New Orleans newspaper, for a physical-therapist position by faxing a copy of his resume to a Mandeville clinic also owned
by Pelican State. Bratton was contacted by Zimmerman, and they arranged for a job
interview at the Mandeville clinic. Bratton then had a second interview with
Zimmerman and Royce Spradlin, whom Zimmerman identified to Bratton as the chief
executive officer of USPT, at the Mandeville clinic. Bratton was not offered a
position at that time. 

 In late 2000 or early 2001, Bratton visited the USPT website with the idea of
presenting USPT the possibility of opening a second physical-therapy clinic in
Slidell. Bratton contacted USPT using its "contact us" link on USPT's website. At
the hearing on his special appearance, Bratton testified that he did not recall having
seen the location of USPT's corporate headquarters on the USPT website.

 In response to his having contacted USPT through its website, Bratton received
a telephone call from one of USPT's employees, who stated that opening another
clinic in Slidell would be a "delicate" matter and that Bratton would hear from USPT
later. Bratton did not hear from anyone at USPT, but Zimmerman did contact Bratton
soon afterwards. Bratton and Zimmerman had another meeting, this time at the
Slidell clinic. Zimmerman told Bratton that a second clinic was not a possibility, but
offered him a staff position as a physical therapist at the Slidell clinic. Bratton
accepted and was hired by Pelican State. 

 After Bratton had verbally accepted the offer, Zimmerman told Bratton that the
company would be sending him an employment agreement in the mail. Bratton
received the employment agreement in the mail from USPT a few days later, although
the agreement recited that it was between Pelican State and Bratton. On appeal and
below, the parties dispute whether the envelope in which the employment agreement
was sent showed USPT's return address in Houston. However, Bratton, who was the
only witness to testify, stated that, although the envelope did have some address with
a logo on it, he did not recall whether the mailing came from Houston. However, he
acknowledged that he later learned that USPT was a Houston-based company.

 Before signing the employment agreement, Bratton questioned Zimmerman and
an employee at USPT about the non-competition and non-solicitation provisions in
the agreement. In February 2001, Bratton signed the employment agreement. Bratton
then mailed the agreement in the provided return envelope so that Spradlin could sign
it. Bratton testified that he did not recall the location to which he mailed the
employment agreement. Spradlin signed the agreement on behalf of Pelican State.

 When he entered into the employment agreement, Bratton knew that Spradlin
was the chief executive officer of USPT, that Pelican State had been established as
a limited partnership by USPT, and that USPT "operated," was "affiliated with," or
"co-owned" the Slidell clinic. However, Bratton was unaware of the location of
USPT's principal place of business or that Pelican State was a Texas entity. 

 The employment agreement contained a one-year non-competition provision
(section 6), a one-year employee-and-patient non-solicitation provision (section 7),
and a non-disclosure provision (section 8). Under the employment agreement, the
initial term of employment was for six months, beginning March 19, 2001 and ending
September 18, 2001. After that initial term, the term of employment would extend
on a month-to-month basis unless terminated by either party with 30 days' notice. 
Bratton worked for Pelican State by extending the term month to month until he
resigned in June 2004 to pursue his own clinic. 

 During Bratton's employment with Pelican State, USPT or one of its Houston
subsidiaries provided legal, financial, accounting, operations, compliance, and other
administrative services to Pelican State and the Slidell clinic. All salary, bonuses, and
other payments made to Bratton under the employment agreement were processed and
paid by USPT or one of its subsidiaries in Houston. Bratton testified that he did not
know that his compensation "was carried out from bank accounts maintained by the
company in Houston" because they appeared on his paystubs as having been drawn
on a Louisiana bank. Additionally, Pelican State provided Bratton's professional
liability insurance through Houston-based insurance companies, though Bratton
testified that he did not know from what state the insurance issued. All of Bratton's
"fringe benefits" while he worked for Pelican State were provided under the
employment policies or the benefits plans of USPT or its Texas-based subsidiaries.

 Bratton attended a two-day initial training and orientation at USPT's Houston
office in May 2001. Approximately two months after Bratton had begun his
employment with Pelican State, the managing director was terminated, and Bratton
assumed the managerial duties at the Slidell clinic. In this role, Bratton reported to
Zimmerman. It was after this promotion that Bratton began to interact with USPT
actively on behalf of the Slidell clinic and to have contacts with Houston. For
example, during his employment with Pelican State, Bratton had over a hundred
contacts with USPT employees in Houston through telephone calls, e-mails, and the
mailing and faxing of documents. Bratton testified that he communicated with
someone at USPT in Houston approximately every two weeks or every month. 
Bratton's contacts with USPT or its subsidiaries in Houston included:


 filling out monthly expense reports,
 receiving monthly financial reports,
 submitting twice-monthly payroll reports,
 submitting weekly marketing reports,
 using the Slidell clinic's intranet, which was linked to USPT's computer
network, to exchange information,




 mailing and faxing documents,
 participating in conference calls,
 using a USPT e-mail address, and
 submitting reimbursement forms for the Slidell clinic's purchases.


Additionally, beginning in May 2002, Bratton traveled to USPT's Houston office on
an annual basis for company meetings related to management at the Slidell clinic,
which resulted in approximately four or five short trips to Texas. At these annual
meetings, Bratton met with employees and reviewed marketing, Medicare, and other
administrative issues. The focus of the marketing meetings was how to increase the
revenue and the profitability of the clinic, which in turn would impact Bratton's
opportunity to earn bonuses. Bratton's uncontradicted testimony was that each of
these contacts with Houston took place at the instruction of Zimmerman or was
initiated by someone at USPT. Bratton also testified that he did not believe that he
had a choice about whether to attend the meetings and training in Houston or whether
to communicate with USPT personnel. 

 On June 4, 2004, Bratton resigned from Pelican State and opened his own
clinic in Louisiana. Pelican State sued Bratton for breach of contract and breach of
his duties to be loyal to and not to disclose the confidential information of Pelican
State. In Pelican State's pleading, it alleged that three days after he had resigned,
Bratton had opened his own physical-therapy clinic less than two miles from the
Slidell clinic, in violation of the non-competition provisions of his employment
agreement. Pelican State also alleged that, relying on confidential information gained
through his employment, Bratton began the process of opening, and soliciting clients
for, his new clinic while still employed with Pelican State. (1)

 Bratton filed a special appearance, which the trial court granted on December
9, 2005 after an evidentiary hearing. As a result, the trial court dismissed Pelican
State's lawsuit against Bratton. Pelican State then requested that the trial court file
findings of fact and conclusions of law. Pelican State also filed a notice of past due
findings of fact and conclusions of law, but the trial court never filed any. 

Failure to File Findings of Fact and Conclusions of Law


 In its first point of error, Pelican State contends that the trial court's failure to
file findings of fact and conclusions of law was error that was harmful because it
prevented Pelican State from properly presenting its case to this Court.

 Under Texas Rule of Civil Procedure 296, in a case tried without a jury, any
party may request the court to file findings of fact and conclusions of law. Tex. R.
Civ. P. 296. However, not every case finally determined without a jury trial is one
tried without a jury within the meaning of rule 296. See IKB Indus. (Nigeria) Ltd. v.
Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997) (considering predecessor of rule
296). "The purpose of Rule 296 is to give a party a right to findings of fact and
conclusions of law finally adjudicated after a conventional trial on the merits before
the court. In other cases findings and conclusions are proper, but a party is not
entitled to them." Id. at 442 (emphasis added). Rulings on special
appearances--even those that, as here, result in a final judgment--are not rendered 
"after a conventional trial on the merits," so as to require the filing of findings of fact
and conclusions of law. See id. at 442-43 (stating general rule and providing
analogous examples); see also Cambridge Capital Corp. v. Skandia Real Estate
Group, No. 05-02-00104-CV, 2002 WL 1380420, at *1, *3 (Tex. App.--Dallas June
27, 2002, no pet.) (not designated for publication) (implying, based on IKB Indus.
(Nigeria) Ltd., that granting of special appearance is ruling for which findings of fact
and conclusions of law are allowed, but are not required). Accordingly, we hold that
the trial court did not err in failing to enter the requested findings of fact and
conclusions of law.

 We overrule Pelican State's first point of error.

Bratton's Special Appearance

 In its second point of error, Pelican State contends that the trial court erred by
granting Bratton's special appearance and dismissing its lawsuit because the evidence
was both legally and factually insufficient to find that Bratton had negated all bases
for personal jurisdiction.

A. The Standard of Review

 A legal conclusion concerning the existence of personal jurisdiction is a
question of law subject to de novo review, but that conclusion must sometimes be
preceded by the resolution of underlying factual disputes. Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002); BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). "When . . . the trial court
does not issue fact findings, we presume that the trial court resolved all factual
disputes in favor of its ruling." Glattly v. CMS Viron Corp., 177 S.W.3d 438, 445
(Tex. App.--Houston [1st Dist.] 2005, no pet.) (citing Am. Type Culture Collection,
83 S.W.3d at 805-06). These implied findings of fact may be challenged for
evidentiary sufficiency when a reporter's record exists. Id. (citing BMC Software
Belg., N.V., 83 S.W.3d at 794). However, "we review de novo if the underlying facts
are undisputed or otherwise established." Preussag Aktiengesellschaft v. Coleman,
16 S.W.3d 110, 113 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). 
Because the relevant, material evidence in the case before us is undisputed, we review
the complained-of ruling de novo. See id.

B. The Law of Special Appearance

 A plaintiff bears the initial burden of pleading allegations sufficient to bring
a non-resident defendant within the terms of the Texas long-arm statute. Am. Type
Culture Collection, 83 S.W.3d at 807. "The nonresident defendant then assumes the
burden of negating all bases of jurisdiction in those allegations." Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 584 (Tex. 2007).

C. The Law of Personal Jurisdiction

 A court may assert personal jurisdiction over a non-resident defendant if the
requirements of the Due Process Clause of the United States Constitution (2) and the
Texas long-arm statute (3) are both satisfied. Helicopteros Nacionales de Colom., S.A.
v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); CSR, Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996). "Because the Texas long-arm statute reaches 'as far
as the federal constitutional requirements of due process will allow,' the statute is
satisfied if the exercise of personal jurisdiction comports with federal due process." 
Preussag Aktiengesellschaft, 16 S.W.3d at 113 (quoting CSR, Ltd., 925 S.W.2d at
594). Moreover, Bratton judicially admitted below that he was "doing business" in
Texas within the meaning of the long-arm statute. We thus examine only whether a
Texas court's exercise of jurisdiction over Bratton would comport with the
requirements of federal due process. See id.

 1. Minimum-Contacts Analysis

 "Federal due process requirements are two-fold." Id. "First, the nonresident
defendant must have purposefully established such minimum contacts with the forum
state that it could reasonably anticipate being sued there." Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985)). "If the
nonresident defendant has purposefully availed itself of the privileges and benefits
of conducting business in a state, it has sufficient contacts to confer personal
jurisdiction." Id. (citing Burger King Corp., 471 U.S. at 475, 105 S. Ct. at 2183). 
"Random, fortuitous, or attenuated contacts do not suffice." Id. (citing Burger King
Corp., 471 U.S. at 475, 105 S. Ct. at 2183). It is the nature and quality of the non-resident's contacts, rather than their number, that are important to the minimum-contacts analysis. Guardian Royal Exch. Assurance, Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 230 n.11 (Tex. 1991).

 Furthermore, only those contacts occurring through the date of injury are
relevant to a minimum-contacts analysis. See Schott Glas v. Adame, 178 S.W.3d 307,
314 (Tex. App.--Houston [14th Dist.] 2005, pet. denied). In its original petition,
Pelican State alleged that its injury occurred during the course of Bratton's
employment with Pelican State and continued until Bratton opened his own
competing clinic. Accordingly, in this case, any contacts with Texas that Bratton had
from shortly after he joined Pelican State through the date that he opened a competing
clinic could be relevant to the minimum-contacts analysis.

 "Minimum-contacts analysis is further divided into general and specific
personal jurisdiction." Preussag Aktiengesellschaft, 16 S.W.3d at 114. We discuss
each type of personal jurisdiction immediately below.

 a. Specific Personal Jurisdiction

 A court may exercise specific personal jurisdiction over a non-resident
defendant if (1) the non-resident purposely directed its activities toward the forum
state or purposely availed itself of the privileges of conducting activities there and (2)
the controversy arises out of or is related to the non-resident's contacts with the forum
state. Freudensprung v. Offshore Technological Servs., Inc., 379 F.3d 327, 343 (5th
Cir. 2004). The non-resident defendant's purposeful conduct, not the unilateral acts
of the plaintiff, must have caused the contact. Helicopteros Nacionales de Colombia,
S.A., 466 U.S. at 417, 104 S. Ct. at 1873. Although not determinative, foreseeability
is an important consideration in deciding whether the non-resident has purposefully
established minimum contacts with the forum state. Glattly, 177 S.W.3d at 446-47.

 We focus on the relationship among the non-resident, the forum, and the
litigation to determine if the alleged liability arises from or is related to an activity
conducted in Texas. Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc., 216
S.W.3d 512, 517 (Tex. App.--Dallas 2007, pet. denies); see Blair Commc'ns, Inc. v.
SES Survey Equip. Serv., Inc., 80 S.W.3d 723, 727 (Tex. App.--Houston [1st Dist.]
2002, no pet.); Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 659
(Tex. App.--Houston [14th Dist.] 1992, no writ), disapproved on other grounds,
Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 791-92 (Tex. 2005). 
We examine the nature of the contacts and the "nexus" that these contacts create with
the forum state. McDermott v. Cronin, 31 S.W.3d 617, 621-22 (Tex. App.--Houston
[1st Dist.] 2000, no pet.). The "arises from or is related to" requirement of specific
personal jurisdiction requires a "substantial connection" between the nonresident
defendant's contacts and the "operative facts of the litigation." Moki Mac River
Expeditions, 221 S.W.3d at 584. Specifically, the non-resident's conduct must have
been purposely directed at or have occurred in the forum and must have a "substantial
connection," resulting in the alleged injuries, with the litigation's operative facts. 
Id.; Glattly, 177 S.W.3d at 446; see Mem'l Hosp. Sys., 835 S.W.2d at 649-50.

 b. General Personal Jurisdiction

 When liability does not arise from any of the defendant's contacts, a court may
nonetheless exercise personal jurisdiction over the defendant if its contacts are
continuous and systematic. See Helicopteros Nacionales de Colombia, S.A., 466 U.S.
at 416, 104 S. Ct. at 1873; CSR Ltd., 925 S.W.2d at 595. This type of personal
jurisdiction is termed general personal jurisdiction. CSR Ltd., 925 S.W.2d at 595. 
"To support a finding of general [personal] jurisdiction, the defendant's forum
activities must have been 'substantial,' which requires stronger evidence of contacts
than for specific personal jurisdiction." Preussag Aktiengesellschaft, 16 S.W.3d at
114 (citing and quoting CSR Ltd., 925 S.W.2d at 595).



 2. Fair Play and Substantial Justice

 "Second, if the nonresident defendant has purposefully established minimum
contacts with the forum, the exercise of jurisdiction must comport with fair play and
substantial justice." Preussag Aktiengesellschaft, 16 S.W.3d at 114 (citing Burger
King Corp., 471 U.S. at 477, 105 S. Ct. at 2184 and Guardian Royal, 815 S.W.2d at
231).

D. Discussion

 In issue two, Pelican State argues that the trial court erred in granting Bratton's
special appearance because Texas had both specific and general personal jurisdiction
over him and because the exercise of personal jurisdiction over Bratton comported
with fair play and substantial justice.

 1. Specific Personal Jurisdiction Over Bratton

 Under issue two, Pelican State first argues that Bratton's contacts with Texas
gave rise to specific personal jurisdiction. In support, Pelican State notes that (1)
Bratton contacted USPT, a Houston-based business, through its website, which
contact eventually led to Zimmerman's contacting Bratton about employment with
Pelican State (4) and (2) Bratton continued his employment with Pelican State month to
month despite having learned that USPT was a Texas business and having had to
communicate with USPT on a regular basis. Pelican State contends that, "by entering
into and continuing his employment relationship," Bratton created "continuing
obligations" with "a Texas resident through which he derived substantial, personal
benefit and [thus] manifestly availed himself of the privilege of conducting business
within" Texas. As evidence of these "continuing obligations," Pelican State relies
especially on Bratton's regular business contacts and communications with USPT's
Houston office after he became the Slidell clinic's director. Pelican State adds, "[I]n
June 2004, when Bratton resigned and began competing with Pelican State and using
its confidential information, he could reasonably foresee that he might cause injury
to Pelican State and/or USPT in their home state." 

 Pelican State's focus is overly broad. As applied to this case, the test for
specific personal jurisdiction over Bratton requires--in addition to Bratton's
purposeful direction of activities toward or purposeful availment of the privileges of
doing business in Texas--a substantial connection between those contacts of Bratton
and the litigation's operative facts. See Moki Mac River Expeditions, 221 S.W.3d at
584. Assuming without deciding that the contacts to which Pelican State points
evidence purposeful availment of Texas's benefits, we hold that there is not a
sufficient connection between those contacts and the litigation to support the exercise
of specific personal jurisdiction over Bratton. 

 Pelican State's petition alleged causes of action against Bratton for breach of
contract and breach of his duties to be loyal to, and not to disclose the confidential
information of, Pelican State. The facts that Pelican State alleged in support of these
claims were (1) that for "some time" before his resignation in June 2004, Bratton had
put "in . . . motion" his plans to open a competing physical-therapy clinic in
Louisiana; (2) that he had used confidential information from Pelican State to do so
after his resignation; (3) that he had allowed Pelican State's patient base to dwindle
before his departure; (4) that he had spent the last months of his employment
supervising construction of and obtaining permits for his new clinic; and (5) that he
was competing with Pelican State in Louisiana contrary to his covenants not to
compete and not to solicit. 

 Given these pleadings, the operative facts of Pelican State's suit will concern
Bratton's acts in disclosing Pelican State's confidential information, in soliciting
Pelican State's clientele for his new clinic, and in using his time and efforts while he
was employed at the Slidell clinic in support of his new clinic, rather than for Pelican
State's business. These are the facts that are relevant for a specific-personal-jurisdiction analysis, and the allegations and the evidence indicated that these acts
happened in Louisiana. See id. (holding that test for the "relatedness" portion of the
specific-personal-jurisdiction test is that a substantial connection exist between the
litigation's operative facts and the non-resident defendant's contacts with Texas); see
also Gustafson v. Provider Healthnet Servs., Inc., 118 S.W.3d 479, 483 (Tex.
App.--Dallas 2003, no pet.) (holding that none of non-resident's following contacts
were sufficiently connected to execution of confidentiality agreement that non-resident was alleged to have breached or to dissemination of confidential information
so as to allow exercise of specific personal jurisdiction over him: (1) employment
relationship itself; (2) two visits to Texas during employment; (3) payment from
Texas bank; (4) submission of requests for reimbursement to Texas and subsequent
cashing of those checks; (5) employee's communication with employees located in
Texas; (6) employee's health benefits' being administered from Texas offices; (7)
provision of employee's health insurance through Texas company; and (8) Texas
location of insurance agents who administered employee's dental and life insurance).

 In contrast, Bratton's regular business contacts with USPT--even were we to
assume that those contacts sufficed to show minimum contacts--were not
substantially related to the litigation's operative facts. For example, Pelican State did
not allege and does not contend that Bratton breached the employment agreement or
his various duties during his trips to Texas or by his regular communications with and
submissions to USPT's Houston employees on routine business matters.

 We distinguish Burger King Corp. v. Rudzewicz, on which Pelican State relies, 
because in it, the Florida plaintiff sued its non-resident franchisee for breach of some
of the same contractual obligations that constituted, or were closely related to, the
franchisee's contacts with Florida. See id., 471 U.S. at 468, 479-81, 105 S. Ct. at
2180, 2186. Here, in contrast, the specific contractual obligations that Pelican State
argues constituted Bratton's contacts with Texas were not those that Bratton allegedly
breached. Additionally, and unlike here, non-resident Rudzewicz had a long-term
franchise relationship with, negotiated directly and extensively with, and had
"continuing and wide-reaching" contacts with the Florida-based plaintiff, and the
franchise agreement contained a choice-of-law clause calling for the application of
Florida law. See id. at 479-82, 105 S. Ct. at 2186-87.

 For these reasons, we hold that the that the trial court did not err in implicitly
concluding that it could not exercise specific personal jurisdiction over Bratton.

 2. General Personal Jurisdiction Over Bratton

 Under the remainder of issue two, Pelican State argues that Bratton's contacts
with Texas also gave rise to general personal jurisdiction.

 In support, Pelican State relies on Bratton's attending a two-day seminar in
Houston soon after he was hired and on his actions after he became the Slidell clinic's
director, which included the following: his regular communications with USPT
employees in Houston; his few annual visits to USPT's office; his insurance and
benefits, which were administered in Houston; and his sending business information
and documentation regularly to USPT in Houston. However, Pelican State did not
contend below, and does not contend here, that Bratton acted outside the scope of his
employment, or that he acted as anything but the agent of Pelican State, in attending
this two-day training session or in conducting these routine contacts. (5) "Texas law is
clear that a business's contacts may not be imputed to its personnel to establish
personal jurisdiction over them." Nikolai v. Strate, 922 S.W.2d 229, 241 (Tex.
App.--Fort Worth 1996, writ denied); cf. Stuart v. Spademan, 772 F.2d 1185, 1197
(5th Cir. 1985) (holding that "an individual's transaction of business within the state
solely as a corporate officer does not create personal jurisdiction over that individual
though the state has in personam jurisdiction over" his employer, although such
"fiduciary shield" may be pierced in circumstances supporting disregard of corporate
entity, such as by alter ego theory). Pelican State has never argued that Bratton's
cited, routine contacts were anything but his actions as Pelican State's employee. 
Therefore, Bratton's routine acts conducted in the course of his employment with
Pelican State cannot be considered in determining whether Texas has general
personal jurisdiction over him.

 In any event, even if these actions can be attributed to Bratton individually for
purposes of determining general personal jurisdiction over him, we hold that they do
not meet due process standards. Bratton testified without contradiction that his travel
to Houston was done at Zimmerman's direction, which he did not believe that he
could refuse, and that his communications with USPT employees were instigated by
USPT, not by him. See Hitachi Shin Din Cable, Ltd. v. Cain, 106 S.W.3d 776, 784
(Tex. App.--Texarkana 2003, no pet.) (noting that contacts that occur at the direction
of third party are not sufficient to establish purposeful availment). Furthermore,
Bratton does not have an agent for service in Texas, a bank account in Texas, any
employees in Texas, or any property interests in Texas, and he does not solicit
business in Texas. Texas courts often consider "the lack of an office, agent, or the
solicitation of business as determinative to the exercise" of general jurisdiction. 
James v. Ill. Cent. R.R., 965 S.W.2d 594, 598 n.1 (Tex. App.--Houston [1st Dist.]
1998, no pet.) (citing Nat'l Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 772-74
(Tex. 1995) and concluding that no general personal jurisdiction existed when
defendant never maintained office or other place of business in Texas and had no
agents in Texas); see also J.D. Fields & Co. v. W.H. Streit, Inc., 21 S.W.3d 599,
602-03 (Tex. App.--Houston [1st Dist.] 2000, no pet.). The test for general personal
jurisdiction requires stronger evidence of contacts than does the test for specific
personal jurisdiction. Preussag Aktiengesellschaft, 16 S.W.3d at 114. This evidence
does not meet that test. 

 We hold that the trial court did not err by implicitly concluding that Bratton
lacked the "continuous and systematic contacts" with Texas that the Due Process
Clause requires for Texas to exercise general personal jurisdiction over him. 

 3. Conclusion Concerning Bratton's Special Appearance

 We hold that the trial court did not err in granting Bratton's special appearance
and in dismissing the claims against him. We overrule Pelican State's second issue.

Appellate Sanctions

 Bratton asks us to sanction Pelican State under Rule of Appellate Procedure 45
for its pursuing a frivolous appeal. See Tex. R. App. P. 45. Under rule 45, we may
award just damages if we objectively determine, after considering the record, briefs,
or other papers filed in the Court, that an appeal is frivolous. Smith v. Brown, 51
S.W.3d 376, 381 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). We examine
the record from the viewpoint of the appellant and decide whether it had reasonable
grounds to believe that the case could be reversed. Id. 

 Pelican State was able to show that Bratton did have some contacts with
USPT's Houston offices. We thus conclude that Pelican State had a reasonable basis
to believe that the judgment might be reversed and that its appeal is not frivolous.

 We overrule Bratton's motion for rule 45 sanctions.

Conclusion


 We affirm the judgment of the trial court.

 All pending motions are overruled.


 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.
1. Specifically, Pelican State alleged that, approximately eight months after
Bratton had begun his employment with Pelican State, Bratton's clinic (Slidell
Physical Therapy Center) was organized and registered as a Louisiana limited
liability company. Pelican State also alleged that Bratton had told Zimmerman
that he had spent time during his last months of employment supervising
construction of and obtaining new permits for the clinic and that he had
allowed the number of patients at the Slidell clinic to dwindle.
2. U.S. Const. amend. XIV, § 1.
3. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997)
.
4. We note that, in its reply brief, Pelican State asserts that it "does not point to
Bratton's use of the 'Contact Us' link on USPT's website as the basis for
specific [personal] jurisdiction," but instead points to his use of that site as
"evidence that he knew, or at least should have known, that he was forming an
employment relationship with a Texas resident prior to signing his contract."
5. Pelican State's allegations against Bratton were that he breached his duties
owed to it--that is, that he acted outside his role as Pelican State's employee
and thus acted in his individual capacity--in divulging Pelican State's
confidential information, soliciting its customers, and competing with it. 
These alleged "ultra vires" actions--which occurred in Louisiana--are
separate from Bratton's actions listed above on which Pelican State relies to
show general personal jurisdiction over Bratton. That is, the matters on which
Pelican State bases its appeal are routine interactions between an employee of
Pelican State (Bratton) and one of Pelican State's limited partners (USPT);
they are not the kind of actions that can be attributed to Bratton in his
individual capacity. Pelican State has not argued and did not produce evidence
to show otherwise.